**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **NELSON ARCE ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 16-14003** |
| **LOUISIANA STATE ET AL.** | **SECTION I** |

**ORDER AND REASONS**

Before the Court is a motion[1] to dismiss filed by defendant Jefferson Parish. For the following reasons, the motion is granted.

**I.**

According to the complaint and sworn affidavits submitted by plaintiffs, Nelson Arce ("Nelson") and Lazaro Arce ("Lazaro"), Nelson is a deaf person whose primary, preferred, and most effective means of communication is American Sign Language ("ASL"). Nelson and his father, Lazaro, filed this lawsuit against the State of Louisiana and the Louisiana Department of Public Safety and Corrections (collectively, "the Department of Corrections" or "the Department"), Jefferson Parish, and Jefferson Parish Sheriff Newell Normand alleging discrimination on the basis of Nelson's disability.

Following his guilty plea and conviction in state court, the complaint alleges that Nelson was sentenced by Judge Michael Mentz on February 9, 2015 to two years of active probation and two years of inactive probation. As a requirement of his probation, Nelson was required to enter and complete an in-house substance abuse

[1] R. Doc. No. 19.

treatment program approved by the state probation department, and he was also required to meet regularly with his probation officer.

Even though Nelson's probation officer was allegedly aware that Nelson is deaf and requires a sign language interpreter to effectively communicate, no qualified interpreter was utilized during Nelson's meetings with his probation officer. Despite Nelson's request for a qualified interpreter, the probation officer instead forced Lazaro to interpret for Nelson and/or attempted to communicate with Nelson by exchanging notes. Lazaro certifies through a sworn affidavit that although he is proficient in ASL, he is not a qualified interpreter and that he struggled to understand and interpret the legal matters discussed at the probation meetings. Nelson certifies that he does not read or write English well, and that he had difficulty expressing himself in writing as well as understanding his probation officer's notes.

Nelson alleges that because an adequate interpreter was not provided at Nelson's meetings with his probation officer, he did not understand that a term of his probation required him to remain in Louisiana. Because of that alleged misunderstanding, Nelson and his father arranged for Nelson to enroll at an in-patient drug treatment facility located in California. When the program sent a letter notifying the Court that Nelson was enrolled in their in-patient program, Nelson's probation officer allegedly filed a motion to revoke Nelson's probation for violating the terms of his probation. Judge Mentz allegedly granted the motion and ordered Nelson to serve 90 days at the Jefferson Parish Correction Center ("JPCC").

Nelson was incarcerated at the JPCC from December 8, 2015 to March 7, 2016 as a result of the probation violation. During Nelson's incarceration at the JPCC,

inmates were allegedly entitled to two thirty-minute telephone conversations per day. The JPCC allegedly did not have video phones installed at the facility, but did have a teletype device or TTY machine (a device that enables deaf individuals to communicate by telephone by allowing them to type their messages instead of speaking).

The complaint alleges that during the period of his incarceration, Nelson was repeatedly denied access to the TTY machine or provided access to the TTY machine only once per day. Other inmates allegedly continued to receive two thirty-minute telephone conversations per day. According to the complaint, Nelson was also forced to attempt to communicate with the JPCC staff through either lip-reading or reading and writing in English, neither of which are alleged to be effective modes of communication for Nelson.

The complaint also alleges that twice during his incarceration, Nelson was penalized for disciplinary infractions of the rules contained in "The Inmate Handbook," the book that outlines the rules for inmates incarcerated at the JPCC. Despite a request by Lazaro, Nelson claims that he was not provided with a live ASL interpreter to read the Handbook to him in ASL in order to ensure that he understood the Handbook. Nelson claims that because no interpreter was provided, he was unable to understand all of the requirements set forth in the Handbook. As a result, Nelson allegedly remains unaware of which rule he violated with respect to one of the two disciplinary infractions for which he was punished.

Nelson was released from the JPCC on March 7, 2016. He was again required to meet with his probation officer as a condition of his probation. Despite Nelson's

claim that he requested that an ASL certified interpreter be provided, Nelson's probation officer again attempted to communicate with Nelson either through Lazaro's interpretations or by exchanging notes. The probation officer allegedly suggested that if Nelson wanted an interpreter present at the meetings, it was Nelson's responsibility to obtain one.

Since Nelson's release from the JPCC, he claims to have been accepted into a treatment program in Georgia which regularly works with disabled persons. Upon Nelson's request, the court approved the transfer of Nelson's probation to Georgia. The complaint alleges that, despite the plaintiffs' request, during the meeting at which the transfer papers were signed the probation officer did not provide an interpreter. When Lazaro declined to interpret for Nelson, the probation officer allegedly insisted that if Lazaro did not do so, Nelson would be required to return at a later date so that an ASL certified interpret could be present. Because the plaintiffs believed that such a delay would have resulted in the vacancy in the Georgia program being filled, Nelson claims that he signed the transfer papers without fully understanding the conditions of his transfer to Georgia.

Nelson remains on probation. He claims that the foregoing actions by the Department of Corrections, Jefferson Parish, and Sheriff Newell Normand were discriminatory, and that he was denied equal treatment because of his disability in violation of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of

the Rehabilitation Act ("RA").[2] Nelson and Lazaro seek damages and injunctive relief.

**II.**

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, the Court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff. *Hunter v. Berkshire Hathaway, Inc.*, No. 15-10854, 2016 WL 3710253, at *3 (5th Cir. July 11, 2016) (citation omitted). The court generally must not consider any information outside the pleadings in deciding the motion, *Sullivan v. Leor Energy*, LLC, 600 F.3d 542, 546 (5th Cir. 2010), however "a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011).

For the complaint to survive a motion to dismiss, the facts taken as true must state a claim that is plausible on its face. *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 637-38 (5th Cir. 2014). A claim is facially plausible

[2] The plaintiffs' complaint does contain a solitary reference to 42 U.S.C. § 1983. R. Doc. No. 1, at 2-3 ¶ 3. However, plaintiff later organizes the allegations in his complaint by claim, and while there are claim sections for the ADA and the RA, there is no section for 42 U.S.C. § 1983. Moreover, in plaintiffs' opposition to the motion to dismiss, they make clear that they are only seeking relief under the ADA and RA. *See* R. Doc. No. 27. Indeed, plaintiffs distinguish case law cited by Jefferson Parish as inapplicable because those cases addressed § 1983 claims. *See* R. Doc. No. 27, at 14-15.

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation omitted) (internal quotation marks omitted). The Court cannot grant a motion to dismiss under Rule 12(b)(6) "unless the plaintiff would not be entitled to relief under any set of facts that [the plaintiff] could prove consistent with the complaint." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

**III.**

**A.**

Jefferson Parish (the "Parish") admits that it owns the JPCC.[3] Nevertheless, the Parish seeks dismissal on the ground that "[b]oth state and local law abrogate the Parish of Jefferson from any liability" for claims related to a prisoner's conditions of confinement.[4] The Parish argues that because state law grants operational control over the jail to the Jefferson Parish Sheriff, only the sheriff can be liable for deficiencies related to the conduct and treatment of prisoners incarcerated there.

[3] R. Doc. No. 19-1, at 2.
[4] R. Doc. No. 19-1, at 3.

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the Rehabilitation Act or RA, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the RA. *Id.* Thus, "[j]urisprudence interpreting either section is applicable to both," *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002), and courts typically treat plaintiffs' ADA and RA claims coextensively and analyze them together as though they were a single claim.[5]

This Court has previously considered the division of authority between the parish governing authority and the sheriff as it relates to the parish jail. *See, e.g.*, *Jones v. Gusman*, No. 12-859, 2016 WL 115775 (E.D. La. Jan. 11, 2016) (Africk, J.). Louisiana law obligates the parish governing authority to provide "a good and

---

[5] While there are several differences between the RA and the ADA, none of those differences matter here. *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (noting that ADA applies to "public entities" whereas RA applies to federally-funded programs and activities); *Maples v. Univ. of Texas Med. Branch at Galveston*, 901 F. Supp. 2d 874, 879 (S.D. Tex. 2012) (noting difference in the causation requirements).

sufficient jail." La. R.S. § 33:4715. Jefferson Parish also bears the responsibility of financing and physically maintaining the parish jail. *See* La. R.S. § 15:702. Significantly, however, it is the sheriff who has the duty of operating the jail facility. *See* La. Rev. Stat. § 15:704. Jefferson Parish does not "have authority over the operations of the jail or the management of the sheriff's employees working therein." *Salvagio v. Doe*, No. 13-5182, 2013 WL 6623921, at *3 (E.D. La. Dec. 16, 2013) (Vance, J.); *see also Fairley v. Stalder*, 294 Fed. App'x. 805, 812 (5th Cir. 2008) ("[W]e agree that day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority.").

Because the parish lacks authority over the operations of the jail and the conduct of jail personnel, the sheriff—not the parish—is typically held responsible when those operations or that conduct fall below the standards imposed by federal law. *See, e.g.*, *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998). However, the allocation of management authority to the sheriff does not entirely absolve the parish of responsibility for an inmate's conditions of confinement. After all, the parish does have the responsibility of financing and physically maintaining the jail. It follows that, at the very least, the parish may be held liable when the physical jail facility itself does not comply with federal standards. It is also conceivable that to the extent the jail's deficiencies are attributable solely to a lack of adequate funding, the parish's obligation to fund the jail could be implicated and the parish might be held responsible.

Courts considering allegations of jail deficiencies brought against a parish have typically asked first whether the allegations implicate the parish's responsibility to finance and physically maintain the jail. If those responsibilities are not implicated, the claim against the parish cannot go forward. *See Salvagio*, 2013 WL 6623921, at *3 ("Because plaintiff's allegations focus on the legality of his detention and do not pertain to the adequacy of the parish's funding of the jail facilities, the parish cannot be held liable for any misconduct on the part of the sheriff's employees with respect to plaintiff's detention."). If those responsibilities are implicated, then the parish is a proper defendant to the lawsuit. *See Thompson v. Ackal*, No. 15-02288, 2016 WL 1371192, at *5 (W.D. La. Feb. 2, 2016), *report and recommendation adopted*, No. CV 15-02288, 2016 WL 1370597 (W.D. La. Apr. 5, 2016); *Roper v. Marino*, No. 92-3988, 1995 WL 222185, at *1 (E.D. La. Apr. 13, 1995) (Vance, J.) (denying St. Charles Parish summary judgment where the plaintiff alleged "that the physical facility of the jail was inadequate" because issues of fact existed "concerning the adequacy of the physical facility" and whether parish funding was sufficient). The Court can discern no justification for extending or restricting a parish's liability under the ADA beyond these previously recognized parameters.

The only allegation in the complaint that potentially implicates Jefferson Parish's legal obligation to fund the JPCC and to physically maintain the JPCC is the allegation that the JPCC "did not have video phones installed at the facility."[6] For the following reasons, however, under the facts of this case the ADA does not require

[6] R. Doc. No. 1, at 6 ¶ 35.

Jefferson Parish to install video phones at the JPCC in order to accommodate disabled individuals like Nelson.

**B.**

"A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004). The ADA's implementing regulations require that public entities "shall ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.152(b)(1). Accordingly, a plaintiff states a claim for relief under the ADA if he alleges: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities[7] for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

Jefferson Parish does not dispute that Nelson adequately alleges that he has a qualifying disability. The complaint alleges that Nelson is "profoundly deaf,"[8] that he "communicates primarily in American Sign Language,"[9] and that he "has limited proficiency in written English."[10] Those factual allegations sufficiently claim an

---

[7] The use of prison telephones is a service or activity protected by the ADA. *See Spurlock v. Simmons*, 88 F. Supp. 2d 1189, 1195 (D. Kan. 2000) (gathering cases).
[8] R. Doc. No. 1, at 3 ¶ 4.
[9] R. Doc. No. 1, at 4 ¶ 18.
[10] R. Doc. No. 1, at 4 ¶ 19.

impairment that substantially limits the ADA-protected major life activities of hearing, speaking, and communicating. *See Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567 (5th Cir. 2002) (affirming jury verdict in favor of a "severely hearing-impaired" individual's ADA and RA claims); *Douglas v. Gusman*, 567 F. Supp. 2d 877, 889 (E.D. La. 2008) (recognizing that a deaf prisoner was disabled within the meaning of the ADA).

However, the allegations in the complaint do not satisfy the second prong of the test. There are two ways in which a disabled inmate can satisfy the second prong. *See Anderson v. Harrison Cty., Miss.*, 639 F. App'x 1010, 1016 n.8 (5th Cir. 2016); *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). The plaintiff can either show disparate treatment, i.e., that he was treated differently and less favorably than other, non-disabled inmates, *see Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir. 1996), or he can show a failure to accommodate, i.e., that the defendant breached its affirmative obligation to reasonably accommodate the plaintiff's disability, thereby denying the plaintiff meaningful access to the services and programs available to other, non-disabled inmates,[11] *see Borum v. Swisher Cty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *9 (N.D. Tex. Jan. 26, 2015) (citing *Owens v. O'Dea*, 149 F.3d 1184, at *3 (6th Cir. 1998)).

The complaint does not allege disparate treatment. Nelson is not complaining that he was singled out by prison officials for treatment that was different than that provided to other JPCC inmates. Nelson was allowed the same access to regular

---

[11] A failure to accommodate may also prove intentional discrimination because of the plaintiff's disability, thereby satisfying the third prong of the analysis as well as the second prong. *See Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014).

telephones as the other inmates. There are no video phones at the JPCC that have been made available to inmates other than Nelson. While Nelson claims that he was treated differently than non-disabled inmates in the sense that they were able to make use of the telephones more often than he was allowed to use the TTY machine, that contention is really at most an allegation that the defendants failed to reasonably accommodate his disability. *See Bultemeyer*, 100 F.3d at 1283. Accordingly, the question is whether, assuming the factual allegations in the complaint to be true, Jefferson Parish's failure to install video phones denied Nelson meaningful access to the use of prison telephones.

"The ADA provides for reasonable accommodation, not preferred accommodation." *Stafford v. King*, No. 11-242, 2013 WL 4833863, at *2 (S.D. Miss. Sept. 11, 2013) (citing *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)). The accommodation of the inmate's disability need not be ideal; instead, it need only be reasonable and effective. *See Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012). Further, a correctional facility is afforded deference in its determination of an appropriate accommodation. *See id.*

The complaint does not allege that the TTY machine at the JPCC does not function or that Nelson cannot communicate effectively using a TTY machine. Instead, the plaintiffs simply claim that Nelson would have preferred to communicate using a video phone. As noted, the ADA does not give Nelson the right to his preferred method of accommodation. As long as the TTY machine afforded Nelson meaningful access to the use of prison telephones, no ADA violation occurred. This Court has not

located a case—and plaintiffs have not provided one—stating otherwise. Clearly, video conferencing is not mandated by the ADA.

Furthermore, although Nelson may have been unsatisfied with the amount of access he had to the TTY machine, he cannot fault the Parish for that alleged shortcoming. Nelson's daily access to the TTY machine was controlled by the sheriff; it was not attributable to any deficiency in the physical facility itself. In any event, the amount of access Nelson was given to the TTY machine appears to be sufficient under the ADA. *See Douglas*, 567 F.Supp.2d at 887-890.

**IV.**

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss is **GRANTED** and that all of plaintiffs' claims in the above-captioned matter against Jefferson Parish are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, December 22, 2016.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**