# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NELSON ARCE ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 16-14003** |
| **LOUISIANA STATE ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion *in limine* filed by plaintiff.[1] The motion requests exclusion of ten of Louisiana's exhibits—referred to by plaintiff as Exhibits 2, 5, 17, 18, 19, 33, 34, 38, 39, and 40. The motion also requests redactions from numerous other exhibits.[2]

First, Louisiana does not intend to introduce Exhibits 6, 9, and 18.[3] Thus, plaintiff's objections with respect to those exhibits are moot.

Further, the parties agree on redactions with respect to Exhibits 20, 22, 26, 27, 28, and 29.[4] The parties also agree on most, but not all, redactions with respect to Exhibits 11 and 23.[5] The parties also agree that Exhibits 3, 15, and 16 are admissible subject to a limiting instruction as to their permissible use by the jury.[6]

With respect to plaintiff's remaining objections, and for the following reasons, plaintiff's motion is denied in part, deferred in part, and dismissed as moot in part.

---

[1] *See* R. Doc. No. 100; *see also* R. Doc. No. 114 (plaintiff's supplemental memorandum).
[2] The Court has already addressed plaintiff's objections to Exhibit 8. *See* R. Doc. No. 141; R. Doc. No. 152.
[3] R. Doc. No. 132, at 8, 10.
[4] *Id.* at 10.
[5] *Id.* at 8.
[6] *Id.* at 6.

1

# I.

Before turning to the objections, it would be useful to briefly explain the two statutory provisions at issue in this case: Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act of 1973.

Title II "focuses on disability discrimination in the provision of public services." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc). To that end, it provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Liability under Title II requires a disabled plaintiff to establish "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

Section 504 "prohibits disability discrimination by recipients of federal funding." *Frame*, 657 F.3d at 223. Section 504 provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance." 29 U.S.C. §794(a). "The ADA and the Rehabilitation Act generally are interpreted *in pari materia*."[7] *Frame*, 657 F.3d at 223.

With this legal landscape mapped out, the Court will now consider each of plaintiff's objected-to exhibits in turn.

## II.

### A.

Exhibit 2 is an email allegedly sent by Nelson Arce to his probation officer.[8] Plaintiff raises objections to this exhibit on relevance, prejudice, authenticity, and hearsay grounds.[9] According to plaintiff, Louisiana cannot authenticate the email as authored by Nelson, and thus the email is irrelevant and more prejudicial than probative.[10] Further, plaintiff contends that the email constitutes hearsay.[11]

Under Rule 901, "the proponent [of an item of evidence] must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The proponent may authenticate the evidence by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Fed. R. Evid. 901(b)(4); *see United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990) ("The government may authenticate a document solely through the use of circumstantial evidence, including the document's own

---

[7] Indeed, "[t]he only material difference between the two provisions lies in their respective causation requirements." *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). Unlike § 504, "under Title II of the ADA, discrimination need not be the sole reason for the exclusion of or denial of benefits to the plaintiff." *Id.* (internal quotation marks omitted).
[8] *See* R. Doc. No. 100-3, at 2.
[9] R. Doc. No. 114, at 2.
[10] *See id.* at 2-4.
[11] *See id.* at 3-4.

3

distinctive characteristics and the circumstances surrounding its discovery."). With respect to emails, courts have not required the testimony of an email's purported sender in order to properly authenticate the email. *See, e.g.*, *United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000). For example, the email address from which an email is sent, as well as the context and content of the email, are factors that may support authentication. *See id.* at 1322-23.

As such, Louisiana may be able to authenticate the email at trial under Rule 901 through the testimony of Nelson's probation officer. If the email is authenticated, then it will constitute the statement of a party-opponent and thus fall outside the Federal Rule of Evidence's definition of hearsay.[12] *See* Fed. R. Evid. 801(d)(2)(A) ("A statement that meets the following conditions is not hearsay: . . . The statement is offered against an opposing party and was made by the party in an individual or representative capacity."); *cf. Siddiqui*, 235 F.3d at 1323; *Tamez v. City of San Marcos, Tex.*, 118 F.3d 1085, 1098 (5th Cir. 1997) (noting that the interrogatory responses of the deceased plaintiff, whose family members had been substituted in his place in the litigation, were admissible as statements of a party-opponent).

With respect to plaintiff's relevance objection, the Court points out that "the standard of relevance in an evidentiary context is not a steep or difficult one to satisfy." *Pub. Emps. Retirement Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321

---

[12] Plaintiff also suggests that the email may feature hearsay within hearsay. *See id.* at 3 ("Additionally, because we do not know if Nelson authored the email or provided input to a person who then authored the email, the email could be hearsay within hearsay — in other words, one person wrote the email based in part upon what another person told them."). However, this suggestion is pure speculation. Therefore, the Court will not consider it.

4

(5th Cir. 2014). "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Relevant evidence is admissible unless otherwise provided by the Constitution, a federal statute, another Federal Rule of Evidence, or another rule prescribed by the Supreme Court. Fed. R. Evid. 402. For example, Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. However, the Fifth Circuit has counseled that Rule 403 is meant to be applied "sparingly." *Baker v. Can. Nat./Ill. Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008).

If Louisiana properly authenticates the email, then the email will easily pass Rule 401's relevance threshold. Indeed, plaintiff concedes that "whether Nelson Arce understood that he needed permission to leave the state of Louisiana is a disputed material issue in this case."[13] Further, the Court can discern no basis at this point to justify exclusion of the email under Rule 403—again, assuming that it is properly authenticated. If authenticated, then it will simply constitute a relevant statement of a party-opponent, and while it may be prejudicial to plaintiffs' position, it is not *unfairly* so. *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially*

---

[13] *Id.* at 4; *see also* R. Doc. No. 132, at 2-4 (Louisiana explaining the email's relevance to the case).

5

outweighing probative value, which permits exclusion of relevant matter under Rule 403.").

As the Court's disposition of plaintiff's objections to Exhibit 2 will turn on whether Louisiana properly authenticates the email, the Court will defer a formal ruling on the objections until trial. At that point, the Court will be in a better position to assess the merits of the plaintiff's objections.

**B.**

Exhibit 5 is a fax sent to Nelson's probation officer, purportedly from a case manager at Awakenings Substance Abuse Recovery Program for the Deaf and Hard of Hearing Persons.[14] Plaintiff objects to Exhibit 5 on relevance, prejudice, character evidence, authenticity, and hearsay grounds.[15]

According to plaintiff, Louisiana cannot authenticate the fax as sent by the case manager.[16] As with Exhibit 2, however, Louisiana may be able to authenticate the fax under Rule 901 through the testimony of Nelson's probation officer. *Cf. United States v. Khorozian*, 333 F.3d 498, 506 (3rd Cir. 2003) ("Kono could—and did—authenticate the fax under Federal Rule of Evidence 901(a) by testifying that she received the fax on the date indicated on the header. Authentication does not conclusively establish the genuineness of an item; it is a foundation that a jury may reject.").

---

[14] *See* R. Doc. No. 100-8, at 2.
[15] R. Doc. No. 114, at 5.
[16] *See id.*

6

Plaintiff further contends that the fax constitutes hearsay and also features hearsay within hearsay.[17] The Federal Rules of Evidence define "hearsay" as "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)-(2). However, where a party offers an out-of-court statement *not* for the truth of the matter asserted—for example, where it is "offered to show the effect on the listener"—then it is not hearsay under the Federal Rules of Evidence. *White v. Fox*, 470 Fed. App'x 214, 222 (5th Cir. 2012).

Louisiana indicates that it plans to introduce Exhibit 5 "to demonstrate the information [that Nelson's probation officer] had and her response to it."[18] In other words, Louisiana does not plan to offer the fax for the truth of the matter asserted, but rather for its effect on the probation officer. Assuming that the effect is relevant to the case, then Louisiana may seek to admit the fax into evidence for this purpose.

With respect to the hearsay-within-hearsay issue, plaintiff points to only one sentence in the fax that she claims constitutes hearsay within the fax: "On Oct 27, 2015, a floor staff reported that Mr. Arce insulted her by using a word that discriminates her race [sic]."[19] Plaintiff argues that the "floor staff" mentioned in the fax "is someone other than [the fax's author] who then made statements to [the fax's author] about what happened on October 27, 2015, which [the fax's author] then relayed in" the fax.

---

[17] *See id.* at 5-6.
[18] R. Doc. No. 132, at 6.
[19] R. Doc. No. 114, at 6.

Rule 805 provides that "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." "[T]he mere fact that one level of a multiple-level statement qualifies as 'non-hearsay' does not excuse the other levels from rule 805's mandate that each level satisfy an exception to the hearsay rule for the statement to be admissible." *United States v. Dotson*, 821 F.2d 1034, 1035 (5th Cir. 1987).

Louisiana does not discuss the hearsay-within-hearsay issue identified by plaintiff. At trial, Louisiana will have to demonstrate that this layer of hearsay in the fax is independently admissible, either because it is non-hearsay or because it is exempt from the hearsay bar. *Cf. Brauninger v. Motes*, 260 Fed. App'x 634, 637 (5th Cir. 2007) ("Although the reports contained statements made by FALMS employees to Williamson or Ellison during the course of their interviews, the district court correctly found that those statements are not hearsay. Because they were offered to prove what was said to Williamson and Ellison, and thus what Williamson and Ellison relied on in making the decision to fire Brauninger, the statements were not offered to prove the truth of the matters asserted.").

Plaintiff also argues that "the reasons surrounding Nelson Arce's discharge from Awakenings are not relevant to any material issue in this case, would be more prejudicial than probative,[20] and would simply be offered to paint Nelson as a bad person who didn't follow the rules."[21] The Court previously questioned the relevance

---

[20] The Court points out that exclusion of evidence under Rule 403 requires that the evidence's probative value be substantially outweighed by the danger of unfair prejudice. It is not enough that evidence simply be more prejudicial than probative.
[21] R. Doc. No. 114, at 7.

8

of the reasons why Nelson was discharged from drug treatment facilities and deferred the issue until trial.[22] The Court will do the same with respect to Exhibit 5.

The Court will defer a formal ruling on plaintiff's objections to Exhibit 5 until trial. At that time, the Court will be in a position to determine whether Louisiana properly authenticates the fax, whether Louisiana demonstrates that the fax does not run afoul of the hearsay rules, whether the fax is relevant, and whether the fax's probative value is substantially outweighed by the danger of unfair prejudice.

## C.

Exhibit 11 and Exhibit 23 both consist of paperwork related to Nelson's probation.[23] Plaintiff objects to the following sentence in Exhibit 11 on the ground that it violates Rules 602 and 701: "The offender indicated he understood the conditions as outlined."[24] Plaintiffs also object to the following substantially identical sentence in Exhibit 23 on the same basis: "The offender indicated understood [sic] the conditions as outlined."[25] According to plaintiff, neither exhibit provides a foundation to support this purported opinion.[26]

Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Moreover, "[e]vidence to prove personal knowledge may consist of the witness's own testimony." *Id.*

---

[22] *See* R. Doc. No. 152.
[23] *See* R. Doc. No. 100-12 (Exhibit 11); R. Doc. No. 100-13 (Exhibit 23).
[24] R. Doc. No. 114, at 18-19; *see also* R. Doc. No. 100-12, at 8.
[25] R. Doc. No. 114, at 19; *see also* R. Doc. No. 100-13, at 2.
[26] *See* R. Doc. No. 114, at 19-20.

9

Under Rule 701, a non-expert witness who intends to provide "testimony in the form of an opinion" must limit her opinions to ones that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Louisiana does not contend that these provisions of the Federal Rules of Evidence do not apply to the statements in these exhibits.

The Court concludes that plaintiff's objection lacks merit. The exhibits both include the following sentence: "The conditions of probation were *read, signed and explained* to the offender, after which he signed same."[27] Further, both exhibits feature Nelson's signature below a confirmation that Nelson received a copy of his supervision plan and understood the plan's requirements.[28] These statements undermine plaintiff's objections to Exhibits 11 and 23.

Therefore, the Court denies plaintiff's request to order that the objected-to sentence in each exhibit be redacted.

### D.

Exhibit 17 is a September 2014 copy of the Offender Complaints and Grievances policy statement promulgated by the Director of the Division of Probation and Parole.[29] The purpose of the statement is "[t]o establish policy and procedure for receiving, routing, hearing, and reviewing offender complaints and grievances."[30]

---

[27] R. Doc. No. 100-12, at 8 (emphasis added); R. Doc. No. 100-13, at 2 (emphasis added).
[28] R. Doc. No. 100-12, at 8; R. Doc. No. 100-13, at 2.
[29] R. Doc. No. 100-14.
[30] *Id.* at 2.

Plaintiff objects to Exhibit 17 on the basis of relevance.[31] According to plaintiff, "[t]here has been no suggestion that a copy of this policy was provided or explained to Nelson Arce or to his father," and in any event the policy "is not relevant to any material issue" in the case.[32] Louisiana counters that "[t]he evidence will show that Nelson received a document setting forth" the policy and that "[h]e never filed a grievance."[33] In Louisiana's view, "Exhibit 17 may be used by the State to demonstrate how the grievance procedure works and how the State would have addressed Nelson's complaints, had he taken the opportunity to file a grievance."[34]

The Court will defer consideration of plaintiff's relevance objection to this exhibit until trial. At that point, the Court will be better positioned to consider its relevance to the case.

**E.**

Exhibit 19 is a regulation promulgated by the Secretary of the Louisiana Department of Public Safety and Corrections.[35] The purpose of the regulation is "[t]o state the Secretary's policy regarding the placement and participation of offenders" in various state programs, "including offenders who participate in the American Sign Language Interpreting Program at state correctional facilities."[36]

Plaintiff contends that Exhibit 19 is irrelevant to the case and more prejudicial than probative.[37] According to Louisiana, offenders who participated in the ASL

---

[31] *See* R. Doc. No. 114, at 20.
[32] *Id.*
[33] R. Doc. No. 132, at 9.
[34] *Id.*
[35] R. Doc. No. 100-16.
[36] *Id.* at 2.
[37] R. Doc. No. 114, at 20.

11

Interpreting Program provided interpretive services during at least one meeting between Nelson and his probation officer, and the regulation is thus "relevant to the question of the qualifications of the individuals who interpreted for the probation meeting."[38]

The Court cannot at this point determine how much of this document, if any of it, is relevant to the issues in this case. Relatedly, the Court is unaware of any evidence that Louisiana plans to offer to show that the participating offenders who interpreted at one or more of Nelson's probation meetings met the criteria set forth in the exhibit. Therefore, as with Exhibit 17, the Court will defer consideration of plaintiff's objections to Exhibit 19 until trial. At that point, the Court will be better positioned to evaluate the objections.

## F.

Exhibit 33 is the transcript of Nelson's Rule to Revoke hearing, Exhibit 34 is the transcript of Nelson's guilty plea, and Exhibit 39 is Nelson's criminal record.[39] Plaintiff objects to these exhibits on numerous bases, including that the documents were never disclosed and were not on Louisiana's original exhibit list, and that the documents are irrelevant, more prejudicial than probative, and constitute improper character evidence.[40] No party has submitted these exhibits to the Court.

Louisiana indicates that it does not plan to offer these exhibits into evidence.[41] Rather, it only intends to use the exhibits for impeachment purposes.[42] Thus, the

---

[38] R. Doc. No. 132, at 10.
[39] *Id.*
[40] R. Doc. No. 114, at 21-22.
[41] *Id.*
[42] *Id.*

Court concludes that plaintiff's objections to these exhibits are moot. However, plaintiff may renew her objections to these exhibits in the event that Louisiana moves to offer them into evidence at trial.

**G.**

Exhibit 38 is a document signed by both Nelson and his probation officer in which Nelson allegedly admits to using two illegal drugs around June 21 or 22, 2016.[43] Plaintiff contends that the exhibit is irrelevant and more prejudicial than probative, and constitutes improper character evidence.[44]

The only theory of relevance that Louisiana offers in support of this exhibit is that "Nelson's drug use is relevant to his apparent claim for emotional distress or mental anguish damages."[45] Louisiana explains as follows:

> According to plaintiffs' pretrial pleadings, witnesses are expected to testify that Nelson suffered emotional distress because of the discrimination he allegedly suffered. The fact that Nelson used various types of illegal drugs[ ] is relevant to the reasons for Nelson's changes in behavior and mood. Thus, it appears that if Nelson was suffering from any adverse effects to his behavior or mood, the fact that he may have been impaired is relevant.[46]

The Court previously rejected this theory of relevance in the context of Louisiana's Exhibit 8.[47] With respect to that exhibit, the Court noted that it was not persuaded that "three documented instances of Nelson admitting to using, or testing positive for, [ ] particular drugs—spread out over a one-year period—[were] relevant to whether Nelson suffered emotional distress as a result of Louisiana's alleged

---

[43] R. Doc. No. 100-23.
[44] R. Doc. No. 114, at 24.
[45] R. Doc. No. 132, at 10.
[46] *Id.* at 10-11.
[47] *See* R. Doc. No. 141, at 4 n.14.

13

treatment toward him."[48] Louisiana has also not indicated that it will offer any testimony to establish a cause-and-effect relationship between Nelson's documented instances of drug use, and Nelson's alleged emotional distress. Mere speculation as to what impact the drugs may have had on Nelson's mood and behaviors is not sufficient to demonstrate relevance.[49]

Because the relevance of Exhibit 38—and, relatedly, its probative value and the danger of unfair prejudice that it poses—will become more clear at trial, the Court will defer a formal ruling on plaintiff's objections to the exhibit until that time.

## H.

Lastly, Exhibit 40 consists of an email exchange between Scott Huffman and Nelson's probation officer.[50] Plaintiff objects to Exhibit 40 on the basis of relevance.[51]

Louisiana indicates that it only intends to use this exhibit for impeachment purposes.[52] The Court therefore concludes that plaintiff's objection to the exhibit is moot. However, plaintiff may renew her objection to this exhibit in the event that Louisiana moves to offer it into evidence at trial.

## III.

Accordingly,

**IT IS ORDERED** that the motion is denied in part, deferred in part, and dismissed as moot in part as set forth herein.

---

[48] *Id.*
[49] However, testimony may support an argument that Nelson's emotional distress could have resulted from a fear that his probation might be revoked based on his drug use.
[50] R. Doc. No. 100-24.
[51] R. Doc. No. 114, at 26.
[52] *See* R. Doc. No. 132, at 11.

14

**IT IS FURTHER ORDERED** that the parties file with the Court all proposed limiting instructions by **Wednesday, December 6, 2017**, at **12:00 noon**.

New Orleans, Louisiana, December 5, 2017.

                                                **LANCE M. AFRICK**
                                      **UNITED STATES DISTRICT JUDGE**