## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**NELSON ARCE ET AL.**                          CIVIL ACTION

**VERSUS**                                        No. 16-14003

**LOUISIANA STATE ET AL.**                       SECTION I

## ORDER AND REASONS

The concept of reasonableness plays a leading role in American law, from the "reasonable person" of tort law fame to the "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" enshrined in the Fourth Amendment. It is also central to the inquiry currently before the Court: after plaintiff Ana Christine Shelton sought as much as millions in compensatory damages, yet won only nominal damages and no other judicially sanctioned relief, what amount of attorney's fees and costs—if any—would it be reasonable for the Court to award her?

## I.

This case arose from Nelson Arce's interactions with the Louisiana criminal justice system. After pleading guilty to a drug possession offense in Louisiana state court, Nelson—who was deaf—was placed on probation in Jefferson Parish.[1] Plaintiff alleged that Jefferson Parish probation office staff knew that Nelson required a qualified American Sign Language ("ASL") interpreter to effectively communicate, but did not provide such an interpreter to facilitate communication at meetings

---

[1] *See* R. Doc. No. 69, ¶¶ 19, 27.

1

between themselves and Nelson.[2] Plaintiff contended that, as a result, Nelson inadvertently violated the terms and conditions of his probation, leading to his incarceration in the Jefferson Parish Correctional Center ("JPCC") for 90 days.[3]

Plaintiff further alleged that JPCC officials likewise understood Nelson's communication needs, but ignored them.[4] For example, plaintiff argued that JPCC officials never interpreted JPCC rules and regulations into ASL for Nelson.[5] Plaintiff alleged that Nelson thus did not understand the rules governing inmates in JPCC, but that, notwithstanding, JPCC twice penalized Nelson for violating these rules.[6]

On August 22, 2016, Nelson and his father, Lazaro Arce, filed a lawsuit in this Court against the State of Louisiana, through the Department of Public Safety and Corrections ("Louisiana"); Sheriff Newell Normand, in his official capacity as the Sheriff of Jefferson Parish ("Sheriff of Jefferson Parish");[7] and Jefferson Parish.[8] Their initial complaint asserted claims under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act of 1973 ("Rehab Act"), and prayed for compensatory damages, as well as declaratory and injunctive relief, against all defendants.[9]

Nearly two months after initiating their case, Nelson and Lazaro filed a motion for a preliminary injunction against Louisiana, asking the Court to order Louisiana

---

[2] *See id.* ¶¶ 29-30, 33.
[3] *See id.* ¶¶ 38-39.
[4] *See id.* ¶¶ 58, 61.
[5] *See id.* ¶ 44.
[6] *See id.* ¶¶ 44-45.
[7] Upon Sheriff Normand's retirement, his successor, Sheriff Joseph Lopinto, was substituted in his place.
[8] R. Doc. No. 1.
[9] *See id.*

to provide a qualified ASL interpreter for Nelson's probation meetings while the case was pending.[10]  Before the Court had an opportunity to hold an evidentiary hearing or otherwise act on the motion, the parties reached an agreement that addressed Nelson and Lazaro's concerns.[11]  After the parties informed the Court of this development, and with the parties' consent, the Court in a minute entry dismissed the motion for a preliminary injunction as moot.[12]

Several months later and in the midst of discovery, Nelson unfortunately passed away.[13]  All parties have consistently recognized that Nelson's death was unrelated to the litigation.

After learning of Nelson's untimely passing, the Court dismissed without prejudice all claims for injunctive relief without opposition.[14]  Shortly thereafter,

---

[10] R. Doc. No. 25.

[11] *See* R. Doc. No. 43, at 1.

[12] *See id.* at 2.

[13] *See* R. Doc. No. 60; R. Doc. No. 64.

[14] *See* R. Doc. No. 60, at 2.  "Mootness is 'the doctrine of standing in a time frame.'" *Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).  "A case is moot where the cause of action is no longer live, or where the parties no longer hold a personal stake in the outcome." *Henschen v. City of Houston, Tex.*, 959 F.2d 584, 587 (5th Cir. 1992).  Courts examine mootness on a claim-by-claim basis.  *See JSLG, Inc. v. City of Waco*, 504 Fed. App'x 312, 315-19 (5th Cir. 2012) (per curiam) (doing just that).

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).  Nelson's death removed all likelihood that Nelson would suffer any injury in the future as a result of defendants' conduct.  Thus, to the extent that Nelson had standing to pursue prospective relief against defendants prior to his death, those claims became moot upon his death.  *See Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004) ("Beltz's claims for prospective relief are mooted by his death because once dead, he is no longer under a real and immediate threat of repeated injury.").

plaintiff was substituted in Nelson's place and reurged the claims for injunctive relief.[15]  With plaintiff's consent, the Court granted Louisiana's motion to dismiss plaintiff's claims for injunctive relief, as plaintiff did not have standing to assert such claims.[16]

Prior to trial, the Court also dismissed all claims against Jefferson Parish,[17] as well as all claims brought by Lazaro.[18]  Further, the parties held settlement discussions[19] before the U.S. Magistrate Judge about two months before trial.

---

[15] *See* R. Doc. No. 68; R. Doc. No. 69.

[16] *See* R. Doc. No. 80.  The Sheriff of Jefferson Parish never moved to dismiss plaintiff's claims for prospective relief against it.  However, as with such claims against Louisiana, plaintiff lacked standing to assert such claims against the Sheriff of Jefferson Parish.

[17] *See* R. Doc. No. 42, at 13.

[18] *See* R. Doc. No. 131, at 51; R. Doc. No. 137, at 6.

[19] Plaintiff did not request a specific amount in compensatory damages either in her amended complaint*, see* R. Doc. No. 68, or at trial.  (Upon inquiry by the Court out of the presence of the jury, plaintiff's counsel told the Court that she believed that she was precluded from asking the jury for a specific amount of damages.  The Court informed her that she was incorrect.)  In fact, plaintiff's settlement demands represent the only instances when plaintiff revealed to defendants and the Court the monetary value that she assigned to her claims.

Plaintiff argues that the "[t]he Court should not consider the private settlement negotiations between the parties in determining her success because these monetary demands took into consideration substantial concessions that would be made in settlement—no finding or admission of liability and no ability to seek costs or attorney's fees." R. Doc. No. 184, at 6.  The Court rejects plaintiff's position.

It appears that the Fifth Circuit has not yet addressed the applicability of Federal Rule of Evidence 408—which governs the admissibility at trial of settlement offers and discussions—to motions for attorney's fees.  However, the Third Circuit has concluded that "Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case," because "the use of such evidence as bearing on the issue of what relief was sought by a plaintiff does not offend the clear terms" of the rule.  *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009).  The Ninth Circuit has adopted the Third Circuit's reasoning.  *See Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011).

The Court likewise finds the Third Circuit's reasoning persuasive.  *Cf. Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1062 (5th Cir. 1998) (Barksdale, J., concurring in part and dissenting in part) (stating his view that courts should be able to consider a

Plaintiff's initial settlement demand was $2 million *per defendant*.[20]  According to

plaintiff, she made this demand "understanding that any settlement would mean no

admission of liability, a significant concession particularly in light of Nelson's

death"[21]—a position seemingly at odds with her recognition that any alleged

transgression by defendants did not cause Nelson's death.

plaintiff's settlement demands "as a factor in making the degree of success and other relevant evaluations for its discretionary, *reasonable* fee award" (emphasis in original)).  Further, this reasoning is consistent with the Fifth Circuit's own observations concerning the reach of Rule 408.  *See Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 299 (5th Cir. 2010) ("We are mindful that Rule 408 should not exclude more than required to effectuate its goals, which, after all, run counter to the overarching policy favoring the admission of all relevant evidence.")

  Further, "[t]he Supreme Court has [at least] twice made clear that the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained."  *Migis*, 135 F.3d at 1047 (majority opinion) (internal quotation marks omitted).  Thus, "in a private civil rights suit, a district court must consider any disparity between the amount of damages sought and the amount of damages awarded."  *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 395-96 (5th Cir. 2016).  Plaintiff's position on her settlement demands would leave the Court with no evidence as to the amount of compensatory damages that she sought in this case—and without such evidence, the Court would be hampered in its duty, when calculating a reasonable fee, "to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought."  *Migis*, 135 F.3d at 1048 (holding that a district court abused its discretion when it did not sufficiently consider these metrics when calculating an attorney's fee award).

  The Court therefore points to plaintiff's settlement demands for the limited purpose of identifying the value that plaintiff assigned to her claims prior to trial.

[20] *See* R. Doc. No. 182-1, at 1; *see also* R. Doc. No. 179-1, ¶¶ 13-14.  The Court notes that, prior to its dismissal of Lazaro's claims, Lazaro was seeking $300,000 from Louisiana and $150,000 from the Sheriff of Jefferson Parish.  *See* R. Doc. No. 182-1, at 1.

[21] R. Doc. No. 184, at 5.  In an affidavit, however, plaintiff's counsel appears to offer a different rationale behind this initial demand.  According to counsel, "Mr. Arce before his death authorized his attorneys to make a 2-million-dollar demand as to each [d]efendant for the severe damages he incurred."  R. Doc. No. 179-1, ¶ 13.  Then, after Nelson's death, plaintiff apparently "decided to respect Nelson's wishes and continue with his demand at the settlement conference because she saw first-hand how dramatically [d]efendants' violation of Nelson's rights affected Nelson's mental health."  *Id.* ¶ 14.

Plaintiff then reduced her demand to $1 million per defendant.[22]  Plaintiff contends that she "indicated a willingness to negotiate," but "[d]efendants did not give any offer whatsoever."[23]

On the eve of trial, however, defendants offered plaintiff a combined $95,000, inclusive of attorney's fees and costs, to settle the case.[24]  Plaintiff alleges that she countered their offer with "an admission of liability, $95,000 in damages, plus an application of attorney's fees and costs."[25]  Defendants argue that "this never occurred."[26]  In any event, no settlement was reached, and the case proceeded to trial.

After nearly a week of hearing the evidence, the jury found that Louisiana and the Sheriff of Jefferson Parish had both discriminated against Nelson in violation of Title II of the ADA and of § 504 of the Rehab Act, and that the discrimination had been intentional.[27]  However, the jury found that the discrimination had not caused any injury to Nelson—a point hotly contested by the parties—and it therefore did not award plaintiff any compensatory damages.[28]  Per the parties' stipulation,[29] the Court then awarded plaintiff nominal damages of $1 as to each defendant.[30]

---

[22] *See id.* ¶ 13.

[23] R. Doc. No. 184, at 5.

[24] *Id.* at 4; R. Doc. No. 187, at 1.

[25] R. Doc. No. 184, at 5.  Plaintiff contends that, on the eve of trial, plaintiff's attorney's fees totaled $394,263.75, *see* R. Doc. No. 179, and costs totaled $18,853.92, *see* R. Doc. No. 181.

[26] R. Doc. No. 187, at 1.

[27] *See* R. Doc. No. 172, at 1, 3; *see also* R. Doc. No. 163, at 1 (stipulation that, if the jury found that a defendant had violated Title II of the ADA, then the jury also found that the defendant had violated § 504 of the Rehab Act).

[28] *See* R. Doc. No. 172, at 2, 4.

[29] *See* R. Doc. No. 163, at 1.

[30] *See* R. Doc. No. 175.

Plaintiff now requests attorney's fees in the amount of $495,853.50 and costs in the amount of $32,373.08.[31]   Louisiana and the Sheriff Jefferson Parish both oppose plaintiff's request.[32]

The Court will address each of plaintiff's requests in turn.

## II.

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001).   However, numerous federal statutes depart from this "American Rule," authorizing courts to award an attorney's fee to a "prevailing party."   The ADA and the Rehab Act are among them.

In an action under Title II of the ADA, "the court . . ., in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs."   42 U.S.C. § 12205.   Similarly, in an action under § 504 of the Rehab Act, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b).

The Fifth Circuit generally interprets the ADA and the Rehab Act *in pari materia*.   *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).   As the

---

[31] R. Doc. No. 176, at 1.   Plaintiff's original memorandum in support of her motion categorized paralegal expenses as costs.   *See* R. Doc. No. 176-1, at 22.   In her supplemental memoranda, she added these expenses to her requested attorney's fees and subtracted them from her requested costs.   *See* R. Doc. No. 179, at 1-3; R. Doc. No. 181, at 1-2.

[32] *See* R. Doc. No. 182; R. Doc. No. 183.

parties have not identified any reason why the Court should interpret the ADA and the Rehab Act differently with respect to the question of attorney's fees, the Court will analyze the fee-shifting provisions of both statutes together. *See id.* at 224.

Further, "[j]urisprudence interpreting either [Title II of the ADA or § 504 of the Rehab Act] is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). For example, the Fifth Circuit has followed its sister circuits and applied case law addressing fee-shifting under 42 U.S.C. § 1988 and Title VII of the Civil Rights Act of 1964 to fee-shifting under Title II of the ADA. *See No Barriers, Inc. v. Brinker Chili's Texas, Inc.*, 262 F.3d 496, 498 (5th Cir. 2001). The same case law would likewise apply to § 504 of the Rehab Act.

## A.

The threshold question is whether plaintiff qualifies as a "prevailing party" against defendants under the ADA and the Rehab Act. "The 'touchstone' of the prevailing party analysis is whether there has been 'a material alteration of the legal relationship' between the parties." *Grisham v. City of Fort Worth, Tex.*, 837 F.3d 564, 569 (5th Cir. 2016) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)).

To modify the parties' *legal* relationship, the modification must bear the "necessary judicial *imprimatur*." *Buckhannon*, 532 U.S. at 605 (emphasis in original). Worded differently, "prevailing party" status requires the receipt of some type of *judicially sanctioned* relief; an opposing party's voluntary change in conduct will not

do. *See id.* at 603-06.[33] Thus, "[t]o qualify as a prevailing party, the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 249 (5th Cir. 2002).

"[T]he Supreme Court has emphasized that 'the prevailing party inquiry does not turn on the magnitude of the relief obtained.'" *Sanchez v. City of Austin*, 774 F.3d 873, 879 (5th Cir. 2014) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "A judgment for damages in *any amount*, whether compensatory *or nominal*, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar*, 506 U.S. at 113 (emphasis added). Thus, even a plaintiff who wins only nominal damages after seeking millions of dollars in compensatory damages still qualifies as a "prevailing party." *See id.* at 113 (concluding, where "petitioners received nominal damages instead of the $17 million in compensatory damages that they sought" and no other relief, *id.* at 114,

---

[33] The *Buckhannon* Court rejected the so-called "catalyst theory" of "prevailing party" status. *See Buckhannon*, 532 U.S. at 610. Under the "catalyst theory," a plaintiff could qualify as a "prevailing party" where she "has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 600. In other words, the "catalyst theory" allowed for an award of attorney's fees even "where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. Prior to *Buckhannon*, a sizable majority of circuit courts—including the Fifth Circuit—endorsed the theory. *See Buckhannon*, 532 U.S. at 626-27 (Ginsburg, J., dissenting) (explaining the development of the "catalyst theory" in the lower courts); *Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005) (explaining the formulation of the "catalyst theory" that the Fifth Circuit applied before *Buckhannon*).

that the Fifth Circuit "erred in holding that petitioners' nominal damages award failed to render them prevailing parties").

In this case, plaintiff won nominal damages from both Louisiana and the Sheriff of Jefferson Parish. As such, longstanding Supreme Court precedent leaves no doubt that plaintiff qualifies as a "prevailing party" under the ADA and the Rehab Act as to each defendant.[34] *See id.* at 112 ("We therefore hold that a plaintiff who wins nominal damages is a prevailing party under § 1988."); *see also Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1052 (5th Cir. 1998) ("Even a plaintiff who wins only nominal damages qualifies as such a 'prevailing party.'").

**B.**

Although both fee-shifting provisions at issue in this case use discretionary language such as "may," courts have more or less transformed the "may" into a "must" in the context of prevailing plaintiffs. *Cf. Sanchez*, 774 F.3d at 880 (5th Cir. 2014) ("[T]he judicial gloss on § 1988, and its legislative history, have constrained that discretion, in most cases converting the statute's 'may' into a 'must.'"). Thus, "[p]revailing plaintiffs 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) (quoting *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402 (1968)).

---

[34] Surprisingly, defendants contend that plaintiff does *not* qualify as a "prevailing party," despite having received nominal damages from both of them. *See* R. Doc. No. 182, at 5; R. Doc. No. 183, at 10. Apparently, defense counsel did not carefully read *Farrar*. (The Court assumes that defense counsel did in fact read *Farrar*, given that they quote from and discuss the case in their memoranda in opposition to plaintiff's motion. *See* R. Doc. No. 182, at 4-5; R. Doc. No. 183, at 6-7.).

This special circumstances exception "is a narrow carve-out of the general rule that prevailing civil-rights plaintiffs should be awarded fees." *Sanchez*, 774 F.3d at 880; *see also Espino v. Besteiro*, 708 F.2d 1002, 1005 (5th Cir. 1983) (describing the exception as "extremely limited"). Defendants carry the high burden of establishing the application of the exception. *See Pruett v. Harris Cty. Bail Bond Bd.*, 499 F.3d 403, 417 (5th Cir. 2007) ("[D]efendants must make an 'extremely strong showing' of special circumstances to avoid paying attorneys' fees . . . .")

In *Riddell v. National Democratic Party*, 624 F.2d 539 (5th Cir. 1980), the Fifth Circuit reviewed the case law and identified two types of "unusual situations" in which courts had denied attorney's fees in full to a prevailing plaintiff: 1) "situations in which the plaintiff filed under section 1983 to recover what was essentially a tort claim for private monetary damages," which "did not require injunctive relief or confer significant civil rights to the public"; and 2) situations in which, "even though the plaintiffs received the benefits desired from their litigation, their efforts did not contribute to achieving those results." 624 F.2d at 544. In the decades since *Riddell*, the Fifth Circuit has "rejected a host of other asserted special circumstances." *Grisham*, 837 F.3d at 569. These include

> a defendant's good faith in enacting overturned laws or policies; a defendant's decision not to appeal a permanent injunction; a plaintiff's ability to pay its own costs; and the district court's view that a prior award of fees was sufficient or that a supplemental request included some clerical work.

*Id.* (internal citations omitted).

Further, the Fifth Circuit has unequivocally held that "[a] prevailing plaintiff's degree of success is *not* a special circumstance that justifies a complete denial of [ ]

11

fees." *Sanchez*, 774 F.3d at 881 (emphasis added). "Instead, the degree of success . . . is a factor—often an important one—to consider in assessing the reasonableness of the fee request." *Grisham*, 837 F.3d at 568; *see also Sanchez*, 774 F.3d at 881 (discussing the distinction between the *availability* of a fee award and the *reasonableness* of a fee request).

The Fifth Circuit has also heavily circumscribed the reach of *Farrar v. Hobby*, 506 U.S. 103 (1992). In *Farrar*, the Supreme Court affirmed the complete denial of a fee award to prevailing plaintiffs, observing that, "[i]n a civil rights suit for damages, . . . the awarding of nominal damages [ ] highlights the plaintiff's failure to prove actual, compensable injury." *Farrar*, 506 U.S. at 115. Thus, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* (internal citation omitted). According to the Fifth Circuit, "the *Farrar* circumstance of nominal but no compensatory damages only justifies a complete denial of fees when monetary relief is the primary objective of a lawsuit."[35] *Grisham*, 837 F.3d at 569; *see also Riley v. City of Jackson, Miss.*, 99 F.3d 757, 759-60 (5th Cir. 1996) (understanding *Farrar* as "illustrative of cases where the plaintiff sought only money damages and was essentially unsuccessful since he did not achieve in any way the ultimate goal of the litigation").

**i.**

---

[35] The Court recognizes that "[a] district court abuses [its] discretion if it applies an 'erroneous interpretation of [ ] special circumstances' to justify denial of fees to an otherwise prevailing party." *Grisham*, 837 F.3d at 567-68.

Both defendants argue that the Court should not award plaintiff any attorney's fees.[36]  Pointing out that "the only claim [against it] that went to trial was for monetary relief" and arguing that "plaintiff never requested that [it] change its policies in any way as part of the settlement negotiations," Louisiana contends that "[p]laintiff's primary objective, indeed, her only objective, was to recover damages."[37]  Yet plaintiff only recovered nominal damages from Louisiana.  In Louisiana's view, "[w]hile plaintiff may feel a personal sense of vindication by the jury's determination that [Louisiana] discriminated against Nelson Arce, this may not be a basis for attorneys' fees."[38]

Likewise, the Sheriff of Jefferson Parish argues that the Court should not require it to pay any of plaintiff's attorney's fees.  Arguing that plaintiff did not have standing to pursue any form of relief against it other than monetary relief, the Sheriff of Jefferson Parish contends that "the only objective available [to plaintiff] vis-à-vis the claims against Sheriff Lopinto . . . was monetary relief."[39]  Indeed, the Sheriff of Jefferson Parish goes further than plaintiff herself, contending that even Nelson did not have standing to pursue prospective relief against it at any time during his participation in the case.[40]

---

[36] The Court notes that defendants improperly conflate the "prevailing party" inquiry and the "special circumstances" inquiry in their oppositions to plaintiff's motion.  *See* R. Doc. No. 182, at 4-9; R. Doc. No. 183, at 6-10; *see also Sanchez*, 774 F.3d at 881 ("The two inquires—prevailing-party status and special circumstances—are distinct.").  Despite defendants' confusion on the law, the Court will consider whether defendants' arguments establish that special circumstances justify a denial of all fees to plaintiff.
[37] R. Doc. No. 182, at 5-7 (emphasis removed).
[38] *Id.* at 5.
[39] R. Doc. No. 183, at 6 (emphasis removed).
[40] *See id.* at 4-5.

For her part, plaintiff argues that her case does not present a special circumstance warranting an outright denial of fees, because her lawsuit "accomplished [a] public goal" and thus her award of nominal damages was "material."[41] Plaintiff then points to various voluntary actions that she alleges defendants took in response to the lawsuit and that she alleges have improved or will improve the experience of deaf and hard-of-hearing individuals who interact with defendants.[42]

Plaintiff also points to this Court's minute entry dismissing Nelson and Lazaro's motion for a preliminary injunction against Louisiana as moot. She argues that the agreement referenced in the minute entry "itself confers prevailing party status on the plaintiff sufficient to warrant an award of attorney's fees," because its terms were allegedly "incorporated" into the minute entry.[43] That is to say, plaintiff insists that Nelson "fully litigated the issue of injunctive relief" against Louisiana prior to his death and that he "obtained the equivalent of an enforceable consent decree as against" Louisiana.[44]

### ii.

---

[41] R. Doc. No. 176-1, at 5-6 (quoting *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring)) (internal quotation marks omitted).

[42] *See id.* at 6, 9-10.

[43] *Id.* at 7-8.

[44] R. Doc. No 184, at 4. The Court notes that, in her filings in support of her motion for attorney's fees, plaintiff refers to herself as the party who "fully litigated the issue of injunctive relief." *Id.*; *see also* R. Doc. No.176-1, at 7 (referring to plaintiff's "emergency motion seeking preliminary injunctive relief" and "[p]laintiff's motion for preliminary injunction"). In a footnote in her memorandum in support of her motion for attorney's fees, however, plaintiff recognizes that "the motion was filed by then living [p]laintiff Nelson Arce." *Id.* n.4.

Before turning to the question of whether special circumstances justify the complete denial of attorney's fees to plaintiff, the Court must correct plaintiff's misrepresentation of the record.

Prior to Nelson's death, the Court never evaluated the merits of Nelson's claims for injunctive relief, and never issued "the equivalent of an enforceable consent decree," against either defendant.[45]  Lest one have any doubt, one need only look to the minute entry on which plaintiff focuses.  The minute entry speaks for itself:

> A follow-up status conference was held on this date with counsel participating on behalf of all parties.  The Court and counsel discussed the plaintiffs' pending motion for a preliminary injunction against the State of Louisiana and the Louisiana Department of Public Safety and Corrections (collectively, "Department of Corrections" or "Department").  Plaintiffs and the Department of Corrections informed the Court that they have reached an agreement whereby the Department will provide plaintiff Nelson Arce with access to an ASL certified interpreter, either in person or through video conferencing, during all future meetings with his probation officer.  Plaintiffs and the Department will confer further regarding the details of the arrangement.

> Accordingly, as indicated at the conference and with the consent of the parties,

> **IT IS ORDERED** that the motion for a preliminary injunction is **DISMISSED AS MOOT** and that the preliminary injunction hearing discussed at the previous status conference is **CANCELLED**.

> **IT IS FURTHER ORDERED** that all other dates and deadlines in this case remain in effect, including the motion submission deadline, pretrial conference date, and trial date.[46]

In short, the minute entry recorded the information that the parties provided to the Court—*i.e.*, that the parties had reached an agreement that addressed the concern

---

[45] *Id.*  Nelson never requested a preliminary injunction against the Sheriff of Jefferson Parish.  For the reasons explained below, the Court would have denied such a request.  *See infra* note 56.

[46] R. Doc. No. 43, at 1.

motivating Nelson and Lazaro's motion for a preliminary injunction. In light of this agreement and with the parties' consent, the Court then dismissed the motion as moot.

The minute entry is not, nor was it ever meant to be, a consent decree that resolved the merits of Nelson's claim for injunctive relief against Louisiana. *Cf. United States v. City of New Orleans*, 731 F.3d 434, 439 (5th Cir. 2013) ("Consent decrees cannot be approved without due consideration by the district court and, once approved, have the force of a legal judgment."); *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349 (5th Cir. 1998) ("A consent decree is akin to a contract yet also functions as an enforceable judicial order."). Further, even if the Court had adopted the agreement mentioned in the minute entry as its own order—it did not— the agreement *alone* would not confer "prevailing party" status.[47] *Cf. Yousuf v. Motiva Enter. LLC*, 246 Fed. App'x 891 (5th Cir. 2007) (per curiam) (concluding that two agreements between the parties, one which the district court "adopted . . . as an order of the court" and the other which facilitated the district court's issuance of a

---

[47] The Fifth Circuit has recognized that a preliminary injunction may qualify as judicially sanctioned relief for purposes of "prevailing party" status in at least one limited situation: where the preliminary injunction is "coupled with the [defendant's] subsequent mooting of the case." *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008). To qualify as a "prevailing party" in this situation, "the plaintiff (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits." *Id.*

Nelson did not "win a preliminary injunction," let alone one "based upon an unambiguous indication of probable success on the merits of [his] claims as opposed to a mere balancing of the equities in [his] favor." *Id.* Further, it is beyond dispute that the Court's minute entry did not cause Louisiana to do anything to moot the case or any claims in it. *See id.*

preliminary injunction, *id.* at 892, did not entitle the plaintiff to attorney's fees and costs under the federal Petroleum Marketing Practices Act, in part because "the district court did not engage in any consideration of the merits of [the plaintiff's] claim, even to a minimal degree," *id.* at 895).

Plaintiff's "prevailing party" status is due solely to her receipt of nominal damages at the conclusion of trial. With plaintiff's misrepresentation set straight, the Court will now proceed to the subject of special circumstances.

### iii.

After carefully considering the parties' arguments and the applicable law, the Court concludes that special circumstances justify the denial of attorney's fees to plaintiff.

As the Court previously explained, "the *Farrar* circumstance of nominal but no compensatory damages only justifies a complete denial of fees when monetary relief is the primary objective of a lawsuit"—an objective that nominal damages do not achieve. *Grisham*, 837 F.3d at 569. In an attempt to demonstrate that she is entitled to an award of attorney's fees, plaintiff points the Court to the initial complaint filed by Nelson and Lazaro on August 22, 2016, which sought declaratory and injunctive relief, and compensatory damages.[48] Plaintiff places great significance on this fact, arguing that "there is no way to characterize [her] claims as seeking solely monetary

---

[48] *See* R. Doc. No. 1, at 13-14.

relief."[49]  Further, plaintiff relies on Justice O'Connor's *Farrar* concurrence[50] to argue that her success was "material" and thus fees are warranted.[51]

However, the relevant question is not whether a party who wins nominal damages alone *only* pursued monetary relief or whether the nominal damages represents a "material" success.[52]  Rather, the relevant question is whether monetary

[49] R. Doc. No. 184, at 3 (emphasis removed).

[50] Justice O'Connor wrote separately in *Farrar* "to explain more fully why, in [her] view, it [was] appropriate to deny fees in [the] case." *Farrar*, 506 U.S. at 116 (O'Connor, J., concurring).  Justice O'Connor opined that Joseph Farrar's "success might be considered material if it also accomplished some public goal other than occupying the time and energy of counsel, court, and client." *Id.* at 121-22.  She ultimately did not discern any public goal served by the *Farrar* plaintiff's nominal damages award. *See id.* at 122.  Thus, Justice O'Connor concluded that "the relevant indicia of success," which included "the public purpose served" by a plaintiff's success, "all point[ed] to a single conclusion: Joseph Farrar achieved only a *de minimis* victory" that did not warrant an award of attorney's fees. *Id.*

[51] R. Doc. No. 176-1, at 5-10.

[52] None of Justice O'Connor's colleagues joined her concurrence.  Further, the Supreme Court has never signaled that the lower courts should follow any opinion in *Farrar* other than the one that garnered a majority of the justices.

That being said, the Court acknowledges that Justice O'Connor's concurrence has played an outsized role in shaping circuit law post-*Farrar*.  A number of circuits have more or less adopted it as circuit law. *See Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 125 (1st Cir. 2004); *Jama v. Esmor Correctional Serv., Inc.*, 577 F.3d 169, 176 (3d Cir. 2009); *Mercer v. Duke University*, 401 F.3d 199, 203-09 (4th Cir. 2005); *Johnson v. Lafayette Fire Fighters Ass'n Local 472*, 51 F.3d 726, 731 (7th Cir. 1995); *Jones v. Lockhart*, 29 F.3d 422, 423-24 (8th Cir. 1994); *Cummings v. Connell*, 402 F.3d 936, 947 (9th Cir. 2005); *Phelps v. Hamilton*, 120 F.3d 1126, 1131-33 (10th Cir. 1997); *see also Glowacki v. Howell Pub. Sch. Dist.*, 566 Fed. App'x 451, 453-55 & 453 n.1 (6th Cir. 2014) (applying Justice O'Connor's concurrence, but declining to adopt it as circuit law).  On occasion, the Fifth Circuit has also incorporated insights offered by Justice O'Connor in her concurrence into its opinions. *See Riley*, 99 F.3d at 760; *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1052 (5th Cir. 1998).

The Fifth Circuit has not, however, adopted the factors proposed by Justice O'Connor to determine whether a technically prevailing plaintiff should nonetheless receive no fee award under *Farrar*. *Compare Grisham*, 837 F.3d at 569 ("We have repeatedly held that the *Farrar* circumstance of nominal but no compensatory damages only justifies a complete denial of fees when monetary relief is the primary objective of a lawsuit), *with Farrar*, 506 U.S. at 122 (O'Connor, J., concurring) ("In this case, the relevant indicia of success—the extent of relief, the significance of the

relief was "the *primary objective* of a lawsuit."  *Grisham*, 837 F.3d at 569 (emphasis added).

The Fifth Circuit has never held that the "primary objective" inquiry should turn on a party's initial pleading—and for good reason.  As litigation proceeds, a party may voluntarily abandon her quest to obtain certain types of judicially sanctioned relief, while continuing to pursue others, thus clarifying through her actions the primary objective of her lawsuit.  Indeed, in *Farrar* itself, Joseph Farrar originally sought both "monetary and injunctive relief" against numerous individuals when he initiated his lawsuit.  *See Farrar*, 506 U.S. at 106.  However, "[l]ater amendments to the complaint . . . dropped the claim for injunctive relief, and increased the request for damages to $17 million."[53]  *Id.*  Thus, by the time the case was tried before a jury, the only form of relief still in play was monetary relief.  It is no surprise, then, that the Supreme Court would view the primary—indeed, exclusive—objective of Farrar's lawsuit to be to receive a damages award.  *See id.* at 114 ("In this case, petitioners received nominal damages instead of the $17 million in compensatory damages that they sought."); *id.* at 115 ("In a civil rights suit *for damages*, . . . the awarding of nominal damages . . . highlights the plaintiff's failure to prove actual, compensable injury." (emphasis added)).

---

legal issue on which the plaintiff prevailed, and the public purpose served—all point to a single conclusion: Joseph Farrar achieved only a *de minimis* victory.  As the Court correctly holds today, the appropriate fee in such a case is no fee at all.").  The Court will not tread into jurisprudential territory that the Fifth Circuit appears to have chosen to avoid.

[53] It appears that Joseph Farrar dropped his injunctive relief claim before his death. *See Estate of Farrar v. Cain*, 941 F.2d 1311, 1312 (5th Cir. 1991), *aff'd sub nom.*, *Farrar v. Hobby*, 506 U.S. 103 (1992).

More fundamentally, a party's pleadings—whether initial or amended—do not conclusively establish that the party has a legal right to pursue all forms of relief requested in the pleadings. Despite requesting prospective relief in her amended complaint,[54] for example, plaintiff never alleged that she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct" of either defendant. *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (internal quotation marks omitted). Thus, plaintiff never had standing to pursue prospective relief against defendants—and she conceded as much well before trial.[55] Similarly, while Nelson had standing to pursue prospective relief against Louisiana—he was still on probation at the time that he initiated this suit and until his unfortunate death—Nelson did not have standing at any time during his participation in this case to pursue prospective relief against the Sheriff of Jefferson Parish.[56]

---

[54] *See* R. Doc. No. 69, at 13-14.

[55] *See* R. Doc. No. 79.

[56] Although no party questioned Nelson's standing to pursue prospective relief against the Sheriff of Jefferson Parish while Nelson was alive, the Court now concludes that Nelson did not have standing to do so. Nelson was released from the JPCC on March 7, 2016. *See* R. Doc. No. 1, ¶ 34. Yet he did not file suit until August 22, 2016—over five months later. Plaintiff has not identified even one case authorizing a former prisoner to pursue prospective relief against the institution at which he was incarcerated after his release from the institution. *See* R. Doc. No. 184, at 10-11. This is no surprise: "The general rule is that a prisoner's transfer or release from a jail moots [any] individual claim for declaratory and injunctive relief" involving conditions at the jail that the prisoner otherwise had standing to bring during his period of incarceration. *McKinnon v. Talladega Cty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) (citing *Holland v. Purdy*, 457 F.2d 802 (5th Cir. 1972)); *cf. Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) ("Herman's transfer from the ECDC to the Dixon Correctional Institute in Jackson, Louisiana, rendered his claims for declaratory and injunctive relief moot.").

However, "if a reasonable likelihood exists that the plaintiff will again be subjected to the allegedly unconstitutional actions," then "[j]urisdiction over a

Therefore, the Court will not determine the primary objective of the lawsuit by examining the pleadings, as plaintiff suggests. Instead, the Court will determine the primary objective of the lawsuit by considering what types of judicially sanctioned relief plaintiff pursued to a court-ordered resolution of her claims, such as a judgment on the merits or to a settlement agreement enforced through a consent decree.[57] *Cf.* *Buckhannon*, 532 U.S. at 603-04 (concluding, in the process of interpreting the term "prevailing party" as used in fee-shifting provisions of federal civil rights laws, that

---

plaintiff's claims for future relief is appropriate" even after the plaintiff is no longer exposed to those unconstitutional actions. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) (emphasis removed). To that end, plaintiff contends that "Nelson at the time of filing his complaint was on active probation and had charges pending in Plaquemines Parish so with those two factors combined, there was a 'sufficient likelihood of future harm' to confer standing upon Nelson" to pursue prospective relief against the Sheriff of Jefferson Parish. R. Doc. No. 184, at 11. The Court disagrees.

Plaintiff's suggestion that Nelson was reasonably likely to find himself incarcerated at JPCC again in the future amounts to nothing more than rank speculation driven by a series of assumptions, including assumptions about how Nelson's charges in Plaquemines Parish would be resolved and how various actors in the Louisiana criminal justice system would react to that resolution. *Cf. Humphreys v. City of Ganado, Tex.*, 467 Fed. App'x 252, 257 (5th Cir. 2012) ("Here, Humphreys lacks standing to seek an injunction against future prosecution for the same conduct because he alleges no facts indicating that such prosecution is likely, or even threatened. Indeed, any threat of future prosecution is highly speculative."); *Herman*, 238 F.3d at 665 ("[A]ny suggestion of relief based on the possibility of transfer back to the ECDC is too speculative to warrant relief."). The "continuing controversy" required to seek injunctive or declaratory relief "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Bauer v. Texas*, 341 F.3d at 358. "[T]he mere possibility of future consequences is too speculative to give rise to a case or controversy." *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987). Therefore, Nelson did not have standing to pursue prospective relief against the Sheriff of Jefferson Parish.

[57] Where the basis for a plaintiff's "prevailing party" status is a preliminary injunction grounded in the plaintiff's likely success on the merits, *see supra* note 47, then the preliminary injunction functions as the equivalent of a court-ordered resolution of her claims.

its prior decisions "establish that enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees").

This approach has much to commend it. First, and critically, it is consistent with relevant Fifth Circuit case law. *Cf. Grisham*, 837 F.3d at 569 ("Grisham, however, is not an unsuccessful seeker of compensatory damages. He obtained the relief he sought: nominal damages in recognition that his rights were violated and injunctive relief prohibiting the City from violating his rights again."); *Sanchez*, 774 F.3d at 883 ("Unlike *Farrar*, Appellants' primary goal in this litigation was to force the City to stop issuing [criminal-trespass notices, or] CTNs. Appellants achieved that goal by securing a permanent injunction against future enforcement of the CTN policy. A fee award was therefore appropriate."); *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996) ("The Appellants here requested first and foremost injunctive relief and secondarily monetary damages and were, for the most part, successful in obtaining the relief they sought. The Appellants obtained, in addition to the nominal damages, injunctive relief by way of a change in the Appellees' conduct that redressed the Appellants' grievances . . . ."); *Pembroke v. Wood County, Texas*, 981 F.2d 225, 227, 231 n.27 (5th Cir. 1993) (distinguishing *Farrar* on the ground that the plaintiff class "waived its damages claim and proceeded to trial seeking only declaratory and injunctive relief," *id.* at 227), *abrogated on other grounds by Buckhannon*, 532 U.S. at 610.[58]

_____

[58] In her memorandum in support of her motion, plaintiff cites *Pembroke* for the proposition that attorney's fees are warranted on the basis of voluntary changes that defendants allegedly implemented as a direct result of the lawsuit. *See* R. Doc. No.

Further, this approach harmonizes the "primary objective" test with the "prevailing party" inquiry by keeping the Court's focus squarely on what permits plaintiff to request attorney's fees in the first place: the receipt of judicially sanctioned relief. *Cf. Buckhannon*, 532 U.S. at 606 ("We cannot agree that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief."). Simply put, having determined that plaintiff qualifies for "prevailing party" status due to her receipt of *some* form of judicially sanctioned relief, the Court will now consider *what* forms of judicially sanctioned relief plaintiff pursued to a court-ordered resolution of her claims.

---

176-1, at 10. In *Pembroke*, the Fifth Court determined that the plaintiffs "should receive reasonable attorney's fees and costs," because the plaintiffs were "entitled to prevailing party status." 981 F.2d at 231. They were entitled to this status, the Fifth Circuit explained, because "[t]he goal of their suit was accomplished as a result of their filing suit and the defendant has failed to show that the improvements were 'wholly gratuitous.'" *Id.*

In short, the Fifth Circuit concluded in *Pembroke* that the plaintiffs were entitled to "prevailing party" status under the "catalyst theory." As the Court previously explained, the Supreme Court has rejected this theory; voluntary actions by a defendant can no longer support "prevailing party" status under federal civil rights laws. *See supra* note 33.

Moreover, it is axiomatic that "the determination of fees 'should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). If the Court treated defendants' voluntary changes in conduct as relevant to any stage of the attorney's fees inquiry, then just such a result seems inevitable. The parties would certainly contest what changes were made and why, and the Court would be required to resolve these intensely factual disputes.

In any event, the Court need not conclusively determine whether voluntary conduct by a defendant may be relevant at some point in the attorney's fee analysis. It is enough to say that an examination of such conduct is not relevant to the question of whether "monetary relief is the primary objective of a lawsuit"—the question currently facing the Court. *Grisham*, 837 F.3d at 569.

It also does not hurt that this approach is consistent with old-fashioned common sense. After all, the reason that any party initiates and maintains a lawsuit is because the party wants to receive some form of judicially sanctioned relief—and to receive such relief, a court-ordered resolution of a party's claims is necessary.

Applying this approach to this case, the only type of judicially sanctioned relief that plaintiff pursued to a court-ordered resolution of her claims—indeed, the only type of relief that plaintiff herself had standing to pursue at all[59]—was monetary relief. Thus, the Court concludes that "monetary relief [was] the primary objective of [the] lawsuit." *Grisham*, 837 F.3d at 569.

Plaintiff failed to achieve this objective. She aimed for compensatory damages numbering as high as the millions, and the jury awarded zero. Plaintiff is walking away from this case with an award of $1 in nominal damages as to each defendant and no other judicially sanctioned relief.

"In a civil rights suit for damages, . . . the awarding of nominal damages [alone] . . . highlights the plaintiff's failure to prove actual, compensable injury." *Farrar*, 506 U.S. at 115. "When a plaintiff recovers only nominal damage because of [her] failure to prove an essential element of [her] claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* (internal citation omitted); *see also Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 678 (5th Cir. 2015) ("[I]f a plaintiff recovers only nominal damages, the proper fee usually is none at all, even though the plaintiff has won his

---

[59] With respect to the Sheriff of Jefferson Parish, the same can be said even of Nelson. *See supra* note 56. Thus, as far as the Sheriff of Jefferson Parish is concerned, this case from its inception has only been about monetary relief: it is the only form of relief that either Nelson or plaintiff had any legal right to pursue against the Sheriff of Jefferson Parish.

case."). This is because, where "substantial fees are expended in pursuit of a remedy that is never achieved, an award of fees amounts to a windfall for the unsuccessful attorneys." *Grisham*, 837 F.3d at 569. For these reasons, the Court will not award attorney's fees to plaintiff.[60]

The Court will now turn to plaintiff's request for costs.

## III.

"[A] district court may not award costs unless it first determines that the expenses are allowable cost items and that the costs are reasonable, both in amount and in necessity to the litigation." *Katz v. State Farm Fire & Cas. Co.*, No. 06-4155, 2009 WL 3712588, at *1 (E.D. La. Nov. 4, 2009) (Vance, J.) (internal quotation marks omitted). With respect to "allowable" costs, Federal Rule of Civil Procedure 54(d)(1)

---

[60] Having concluded that special circumstances justify the denial of all fees to plaintiff, the Court will not proceed to the two-step analysis in which courts generally must engage to determine an appropriate fee award: 1) "calculat[ing] a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers," and 2) "consider[ing] whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case." *Migis*, 135 F.3d at 1047; *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (articulating the twelve factors that a court should consider to adjust the lodestar).

Were the Court to proceed to this analysis, however, the Court doubts that it would award plaintiff anything near her requested $495,853.50 in attorney's fees. *Cf. Migis*, 135 F.3d at 1048 ("The attorney's fee award was over six and one-half times the amount of damages awarded. Migis sought over twenty-six times the damages actually awarded. Regardless of the effort or ability of her lawyers, we conclude that these ratios are simply too large to allow the fee award to stand."); *Smith v. Acevedo*, No. 09-620, 2010 WL 11512274, at *2 (W.D. Tex. Nov. 22, 2010) (Sparks, J.) ("Having considered all of the *Johnson* factors, the evidence provided by Smith's counsel, and the arguments and objections of the parties, the Court awards $2,500 in attorneys' fees and costs to Smith's counsel. This sum appropriately reflects Smith's very limited success, while still recognizing the useful time spent by counsel, the minor controversy involved in the case, and the importance of civil rights litigation."), *aff'd*, 478 Fed. App'x 116 (5th Cir. 2012).

provides that a "prevailing party" in federal court "should be allowed" to recover their non-attorney-fee "costs." "There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs." *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006)

Title 28, United States Code, § 1920 "enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). These categories include:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; *see also Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (summarizing § 1920).

"The Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Mota*, 261 F.3d at 529. In this case, the ADA provides the Court with an additional source of authority to award costs.

The relevant provision of the ADA—codified at 42 U.S.C. § 12205—provides that "the court . . ., in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." Under this section, "courts also allow an award of costs for Federal Express, electronic research, long-distance calls, printing, attorney-fee declarants, and computer-based research." *Gilmore v. Elmwood S., L.L.C.*, No. 13-37, 2015 WL 1245770, at *7 (E.D. La. Mar. 18, 2015) (Knowles, M.J.) (citing *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005); *InvesSys, Inc. v. McGraw–Hill Cos., Ltd.*, 369 F.3d 16, 22 (1st Cir. 2004)).

Further, the U.S. Department of Justice ("DOJ") has promulgated a regulation implementing § 12205 with respect to nondiscrimination on the basis of disability in state and local government services. *See* 28 C.F.R. § 35.175. DOJ's regulation parrots the language of § 12205. *Compare id.*, *with* 42 U.S.C. § 12205.

According to DOJ guidance interpreting this regulation, "[l]itigation expenses include items such as expert witness fees, travel expenses, etc."[61] 28 C.F.R. § Pt. 35, App. B. Courts in this circuit have relied on DOJ guidance when determining what items fall under the rubric of "litigation expenses" under the ADA. *See, e.g.*, *Jones v. White*, No. 03-2286, 2007 WL 2427976, at *8 (S.D. Tex. Aug. 22, 2007) (Rosenthal, J.); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597-98 (1999) ("Because [DOJ]

---

[61] DOJ's guidance further notes that "[t]he [House] Judiciary Committee Report [on the ADA] specifies that such items"—namely, litigation expenses—"are included under the rubric of 'attorneys fees' and not 'costs' so that such expenses will be assessed against a plaintiff only under the standard set forth in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412 (1978)." 28 C.F.R. § Pt. 35, App. B (citing H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. 3, at 73 (1990)).

is the agency directed by Congress to issue regulations implementing Title II, its views warrant respect."); *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 536 n.34 (5th Cir. 2016) ("The Supreme Court instructs that the DOJ's guidance in reference to the ADA is entitled to deference."); *Frame*, 657 F.3d at 224 ("[B]ecause Congress directed [DOJ] to elucidate Title II with implementing regulations, DOJ's views at least would 'warrant respect' and might be entitled to even more deference.").

## A.

Plaintiff requests a total of $32,373.08 in costs, divided into nine categories of expenses:

| | |
|---|---|
| Fees of the Clerk: | $400.00 |
| Fees for summons and subpoena: | $1,567.24 |
| Fees for printed or electronically recorded transcripts: | $7,179.24 |
| Fees for disbursements for printing: | $59.37 |
| Travel expenses for depositions, court conferences, and trial: | $12,357.68 |
| Computerized legal research: | $1,124.38 |
| Expert witness: | $8,587.34 |
| Postage/Courier: | $273.05 |
| Interpreter: | $824.78[62] |

As a preliminary matter, the Court concludes that plaintiff supports her request with proper documentation.[63] Further, having reviewed plaintiff's documentation and considered the necessity of these expenses to plaintiff's case, and noting the fact that

---

[62] R. Doc. No. 181, at 1.
[63] *See* R. Doc. No. 188-1.

defendants have not raised any challenges to plaintiff's request for costs,[64] the Court concludes that these expenses are both reasonable in amount and were necessary to the litigation. *See Katz*, 2009 WL 3712588, at *1.

The next question is whether these expenses are "allowable cost items"—in other words, expenses that plaintiff has a legal right to recover. *Id.*

## B.

After reviewing the applicable law, the Court will award plaintiff some—but not all—of these expenses as "costs." Under § 1920, plaintiff may recover five of her nine categories of expenses:[65]

| | |
|---|---|
| Fees of the Clerk: | $400.00 |
| Fees for summons and subpoena:[66] | $1,567.24 |

---

[64] Defendants do not address plaintiff's request for costs in their oppositions to plaintiff's motion. *See* R. Doc. No. 182; R. Doc. No. 183. Therefore, defendants have waived any challenge concerning the request. *Cf. United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010) (explaining that a party waives any issue that it fails to satisfactorily brief on appeal).

[65] Plaintiff appears to suggest that her counsel's travel expenses are recoverable under § 1920. *See* R. Doc. No. 176-1, at 24 & n.18. If so, plaintiff is mistaken. *See Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993) ("The district court denied Coats' request for travel expenses in the amounts of $711.69 and $642.35, $1,744.96 for 'blow-ups' used at trial, and $1,175.00 in video technician fees incurred for video depositions. These expenses are not included in § 1920 and therefore are not recoverable."), *aff'd en banc*, 61 F.3d 1113 (5th Cir. 1995).

[66] As Judge Fallon has recognized:

> Although 28 U.S.C. § 1920 does not expressly authorize the payment of private process servers, the Fifth Circuit acknowledged, in *Gaddis v. United States*, 381 F.3d 444, 456 (5th Cir. 2004), that section 1920(1)'s phrase "fees of the clerk and marshal" has been interpreted to include private process servers' fees as taxable costs "because the service of summonses and subpoenas is now done almost exclusively by private parties employed for that purpose, not the U.S. Marshal."

| Fees for printed or electronically recorded transcripts: | $7,179.24 |
| Fees for disbursements for printing: | $59.37 |
| Interpreter: | $824.78 |

Moreover, § 12205 permits plaintiff to recover two additional categories of expenses:

| Computerized legal research: | $1,124.38 |
| Postage/Courier: | $273.05 |

*See Gilmore*, 2015 WL 1245770, at *7. Because the Court concludes that these expenses—totaling $11,428.06—are sufficiently supported and reasonable, the Court will award them.

However the Court will not award plaintiff's requested travel expenses ($12,357.68) or expert witness expenses ($8,587.34). As the Court previously explained, both § 12005 and DOJ's regulation implementing § 12205 provide that "the court . . ., in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205; 28 C.F.R. § 35.175. Worded differently, a "prevailing party" may recover an "attorney's fee" and "costs" under § 12205 and its implementing regulation, with "litigation expenses" included *as part of* the "attorney's fees." *See, e.g.*, *Jones*, 2007 WL 2427976, at *7-*8

---

*MCI Commc'ns Servs., Inc. v. Hagan*, No. 07-0415, 2010 WL 11549409, at *2 (E.D. La. Feb. 12, 2010) (Fallon, J.); *see also Cashman Equip. Corp. v. Smith Marine Towing Corp.*, No. 12-945, 2013 WL 12229038, at *11 (E.D. La. June 27, 2013) (Wilkinson, M.J.) (observing that "district courts in the Fifth Circuit have in recent years begun to award costs for private process servers, though some have limited those costs to the amount charged for service by the U.S. Marshal" and citing cases), *report and recommendation adopted*, No. 12-945, 2013 WL 12228976 (E.D. La. July 12, 2013) (Vance, J.); *Katz*, 2009 WL 3712588, at *2 ("Parties routinely employ private process servers . . . . And courts often allow for the taxation of such costs, especially when locating witnesses is cumbersome.").

(incorporating "litigation expenses" into the "attorney's fee" awarded pursuant to § 12205). DOJ has interpreted the phrase "litigation expenses" in its regulation to include travel expenses and witness expert expenses. 28 C.F.R. § Pt. 35, App. B; *see, e.g.*, *Jones*, 2007 WL 2427976, at *7-*8 (relying on DOJ guidance to categorize expert fees as "litigation expenses"). Plaintiff offers no reason why the Court should deviate from this interpretation.

The Court has already concluded that an award of attorney's fees would be inappropriate in this case. Because "litigation expenses" such as travel expenses and expert witness expenses are a component of the attorney's fee under § 12205, the Court will likewise not award these expenses to plaintiff.

## C.

Notwithstanding the Court's resolution of plaintiff's request for expert witness expenses, the Court advises plaintiff that her expert witness qualifies for the standard witness fees and allowances available under § 1920(3) and defined by 28 U.S.C. § 1821. These fees and allowances—which "shall be paid" to a witness to cover "attendance at any court of the United States" or "attendance . . . before any person authorized to take his deposition pursuant to any rule or order of a court of the United States," 28 U.S.C. §§ 1821(a)(a)—include a per diem, travel expenses, and a subsistence allowance, *see id.* §§ 1821(a)-(d).

If plaintiff intends to recover § 1920(3) fees and allowances on behalf of her expert, then she may do so by filing a request with the Clerk through the procedures specified in Local Rule 54.3. Plaintiff must file such a request by the deadline set forth below.

## VI.

The attorney's fees inquiry ultimately revolves around reasonableness: what is a *reasonable* fee?  Plaintiff Ana Christine Shelton sought as much as millions in compensatory damages.  She achieved only nominal damages and no other judicially sanctioned relief.

As the Supreme Court has pointed out, "[w]hen a plaintiff recovers only nominal damage because of [her] failure to prove an essential element of [her] claim for monetary relief, the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115.  In this case, where plaintiff's primary objective was to receive monetary relief and she did not succeed, reasonableness demands no less a result.

Accordingly,

**IT IS ORDERED** that plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that plaintiff's request for attorney's fees is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's request for costs is **GRANTED** and that plaintiff is awarded costs in the amount of **$11,428.06**, as set forth herein. Each defendant shall be responsible for one-half of the costs, or **$5,714.03 each**.

**IT IS FURTHER ORDERED** that plaintiff may file a request with the Clerk through the procedures specified in Local Rule 54.3 to recover § 1920(3) witness fees and allowances.  If plaintiff intends to recover such fees and allowances, then plaintiff shall file her request with the Clerk by **March 15, 2018**.

New Orleans, Louisiana, March 1, 2018.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**