# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

NELSON ARCE, ET AL.                    CIVIL ACTION

VERSUS                                  No. 16-14003

LOUISIANA STATE, ET AL.                  SECTION I

## ORDER & REASONS

This case is before the Court on remand from the United States Court of Appeals for the Fifth Circuit regarding attorneys' fees. For the following reasons, plaintiff Ana Christine Shelton's request for fees and additional costs is granted in part and denied in part, as stated herein.

## I.

This action was originally filed by Nelson Arce, a deaf man who was placed on probation in Jefferson Parish after pleading guilty to a drug possession offense in Louisiana state court. In his complaint, Arce alleged that he had limited proficiency in written English and that he communicated primarily in American Sign Language ("ASL"). According to Arce, his probation officer refused to provide him with an ASL interpreter during their meetings.[1] As a result, Arce alleged, he did not understand the terms of his probation and inadvertently violated them.

Beginning in December of 2016, Arce was incarcerated for the probation violation in the Jefferson Parish Correctional Center ("JPCC") for 90 days. Arce alleged that JPCC officials failed to provide him with an ASL interpreter. Because he

---

[1] The evidence at trial showed that Arce's primary probation officer communicated with him largely through his father, acting as an interpreter, or in writing.

did not have an interpreter to help him review JPCC's inmate handbook, Arce alleged that he did not understand JPCC's rules and regulations and that he was penalized twice for purported violations. After Arce was released from JPCC, his probation officer allegedly again refused to provide him with an ASL interpreter during their meetings.

In August of 2016, Arce and his father sued the State of Louisiana, through the Louisiana Department of Public Safety and Corrections, and Jefferson Parish Sheriff Joseph Lopinto (collectively, the "defendants") for violations of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act.[2] They sought compensatory damages as well as declaratory and injunctive relief. Early in the litigation, Arce and his father moved for a preliminary injunction against the State of Louisiana, requesting that the Court order the State of Louisiana to provide him with a qualified ASL interpreter during the remainder of his probation meetings and while the case was pending. Before the Court could rule on the motion, the parties reached an agreement, pursuant to which the State of Louisiana would provide Arce with an ASL interpreter during all future probation meetings. Accordingly, the Court dismissed the motion as moot.

For reasons unrelated to this lawsuit, Arce unfortunately passed away in May of 2017, and Ana Christine Shelton, as the administrator of Arce's estate and the mother of his children, was substituted as the plaintiff. Shortly thereafter, the Court

---

[2] Arce originally sued Sheriff Newell Normand. After he retired, Sheriff Normand's successor, Joseph Lopinto, was substituted as a defendant. Arce also sued Jefferson Parish, but the Court dismissed Arce's claims against the parish on motion pursuant to Federal Rule of Civil Procedure 12(b)(6). R. Doc. No. 42.

dismissed all claims for injunctive relief, without opposition, for lack of standing. The case proceeded to trial, the jury finding that both the State of Louisiana and Sheriff Lopinto had intentionally discriminated against Arce in violation of the ADA.[3] However, the jury also found that the discrimination had not caused Arce injury and, therefore, it did not award him any compensatory damages. Rather, in accordance with a stipulation among the parties, the Court awarded Shelton nominal damages of $1 as to each defendant.

Shelton moved for an award of attorneys' fees in the amount of $495,853.50. After determining that Shelton was a prevailing party, the Court nonetheless held that special circumstances justified the denial of attorneys' fees because, at trial, Shelton sought solely monetary relief but achieved only nominal damages.[4] Shelton timely appealed the Court's denial of fees. Upon review, the Fifth Circuit vacated this Court's order and remanded the case for reconsideration. *Shelton v. Louisiana*, 919 F.3d 325, 331 (5th Cir. 2019). The Fifth Circuit instructed this Court to consider "whether [Arce's, and subsequently Shelton's,] lawsuit achieved a compensable public goal"; however, it expressed no opinion as to the propriety of a fee award. *Id.*

## II.

The United States Supreme Court's decision in *Farrar v. Hobby*, 506 U.S. 103 (1992), provides the legal framework in this matter. *Shelton*, 919 F.3d at 329. In

---

[3] Before trial, the parties stipulated that, if the jury found that either defendant violated Title II of the ADA, the jury would be considered to have also found that the defendant violated § 504 of the Rehabilitation Act. R. Doc. No. 163, at 1.

[4] *See* R. Doc. No. 192, at 17, 25. Shelton also sought $32,373.08 in costs. Although the Court did not find that attorneys' fees were warranted, it awarded Shelton costs in the amount of $11,428.06. *Id.* at 32.

*Farrar*, the Supreme Court affirmed the lower court's denial of attorneys' fees to the prevailing plaintiffs,[5] who exclusively sought monetary relief but achieved only nominal damages. 506 U.S. at 105–08. The Supreme Court observed that, "[i]n civil rights suits for damages, . . . the awarding of nominal damages [ ] highlights the plaintiff's failure to prove actual, compensable injury." *Id.* at 115. "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* (citation omitted).

Here, Shelton sought compensatory damages, but she ultimately failed to persuade the jury that Arce suffered any injury arising out of the defendants' discrimination. As a result, she recovered only nominal damages, and "*Farrar* counsels that denial of attorneys' fees may be appropriate." *Shelton*, 919 F.3d at 329.

But the Court's inquiry does not end there. "'[E]ven nominal damages can support an award of attorneys' fees' if the litigation 'achieved a compensable goal.'" *Id.* at 329–30 (quoting *Hopwood v. Texas*, 236 F.3d 256, 278 (5th Cir. 2000)). The Fifth Circuit decisions affirming fee awards in these limited cases "have focused on the plaintiff's accomplishments within the litigation itself, such as the deterrent value of a jury verdict or the significance of a new legal precedent." *Id.* at 331. The Court must therefore determine whether—despite Shelton's failure to establish one of the elements of her claim for monetary damages at trial and her resulting failure to

---

[5] The Court has already held that Shelton is a prevailing party. Hence, its analysis is limited to reconsidering whether Shelton is entitled to attorneys' fees and deciding whether she may also recover those fees and costs incurred as a result of her appeal.

achieve more than nominal damages—she nonetheless accomplished a compensable goal that entitles her to attorneys' fees.

## III.

Shelton argues that this litigation accomplished two compensable legal: (1) that it set new legal precedent and (2) that she achieved a favorable jury verdict with deterrent effects. With respect to her argument that Arce's lawsuit has generated significant legal precedent, the Court is unpersuaded.

Shelton relies on the fact that this case has been cited twice since trial concluded.[6] First, in 2016, the plaintiffs in a disability-discrimination action cited this Court in support of their motion for summary judgment.[7] The plaintiffs argued:

> Defendants' failure to provide qualified ASL interpreters to Plaintiffs clearly violates the Rehabilitation Act and ADA. *See Arce v. Louisiana*, No. 16-cv-14003, 2017 WL 6767200 (E.D. La., Dec. 18, 2018) (finding defendants were liable under [the] Rehabilitation Act and ADA for failing to provide qualified ASL interpreter to hard of hearing offender).

*Levy v. La. Dep't of Pub. Safety & Corr.*, Civil Action No. 16-542 (M.D. La.) R. Doc. No. 55-31, at 15–16. But the *Levy* plaintiffs' reference is dubious at best. They cited to this Court's one-sentence judgment following the jury's verdict in this matter.[8] Although the descriptive parenthetical suggests that the Court found that the defendants violated Arce's rights, the Court made no such finding. Rather, the *jury* made the finding, and the Court entered judgment accordingly.

---

[6] R. Doc. No. 216, at 10–11.
[7] *Id.* at 10 (citing *Levy v. La. Dep't of Pub. Safety & Corr.*, Civil Action No. 16-542 (M.D. La.) R. Doc. No. 55-31).
[8] See R. Doc. No. 175.

Second, another section of the Court recently cited this Court's ruling in response to the motion to dismiss filed by the State of Louisiana in this case.[9] *See Pegues v. Bd. of Supervisors*, No. 18-2407, 2018 WL 4076385, at *3 & nn.23, 26 (E.D. La. Aug. 27, 2018) (Morgan, J.). According to Shelton, this Court's order "clarified complex legal issues regarding the Fourteenth Amendment and [s]tate [i]mmunity in the context of ADA Title II cases."[10] Even so, in the portion of this Court's opinion cited by Judge Morgan, the Court did not posit a novel theory or formulate a new approach to the law; it simply summarized the law as it was already firmly established by the Supreme Court. *See id.* (citing *Arce v. Louisiana*, No. 16-14003, 2017 WL 5619376, at *22 (E.D. La. Nov. 21, 2017) (Africk, J.)). In the same section of this Court's opinion, the Court did discuss the existence of a circuit split on a particular sub-issue pertinent to the State of Louisiana's motion—perhaps that analysis is the "clarif[cation] of complex legal issues" to which Shelton alludes. But Judge Morgan did not cite this Court for that discussion.

Moreover, the fact that this Court's ruling has been cited once by another court does not demonstrate that Shelton achieved a compensable legal goal. This cannot be what the Fifth Circuit intended when it spoke of rewarding the creation of "significant legal precedent." *Cf. Hopwood v. State of Tex.*, 999 F. Supp. 872, 878 (W.D. Tex. Mar. 20, 1998), *aff'd in part and reversed in part*, 236 F.3d 256 (5th Cir. 2000) (explaining that the plaintiffs achieved a declaration by the Fifth Circuit that the University of

---

[9] *See* R. Doc. No. 216, at 11.
[10] *Id.*

Texas at Austin School of Law's use of racial preferences served no compelling state interests under the Fourteenth Amendment, a significant legal precedent).

Shelton also argues that it was necessary to obtain a jury verdict in her favor in order to deter further ADA violations by the defendants. According to Shelton, both defendants denied any wrongdoing up until, and through, trial.[11] As a result, Shelton argues, the verdict was pivotal to holding the defendants accountable for discrimination and protecting similarly situated deaf and hard-of-hearing individuals in the future.[12] Shelton also argues that Arce's lawsuit was the "primary impetus" behind substantial policy changes implemented by each defendant.[13]

In response, the defendants argue that the jury verdict is simply too vague to serve as a deterrent.[14] They contend that the verdict in this matter resembles the verdict in *Farrar*, which the Supreme Court described as "accomplish[ing] little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way.'" 506 U.S. at 114 (quoting *Hewitt v. Helms*, 482 U.S. 755, 762 (1991)).[15] Both defendants also

---

[11] R. Doc. No. 216, at 4.

[12] *Id.*

[13] *Id.* at 8. To support her contention, Shelton relies on trial testimony from representatives of both defendants. *Id.* at 4–7. Shelton asserts that the testimony demonstrates that, before this litigation, neither defendant had a practice of providing auxiliary aids to deaf or hard-of-hearing individuals and that both defendants failed to adequately train their employees. *Id.* at 4. But the relevant inquiry for purposes of determining whether this litigation achieved a compensable goal is the defendants' conduct *after* and *as a result* of this lawsuit.

[14] R. Doc. No. 222, at 5; R. Doc. No. 223, at 6–8.

[15] *See* R. Doc. No. 222, at 5.

argue that there is no evidence demonstrating that they took any action as a direct result of the litigation.[16]

With respect to Sheriff Lopinto, Shelton has failed to establish that this lawsuit had any deterrent effect or that it prompted any significant policy changes. Shelton points to the sheriff's installation of a video relay service ("VRS") system—effectively, a videophone—at JPCC.[17] At trial, several witnesses testified regarding JPCC's use of auxiliary aids for deaf and hard-of-hearing individuals. Before 2017, JPCC relied exclusively on TTY machines, which allow deaf or hard-of-hearing inmates to use the telephone. Eventually, in large part as a result of the work of advocates like Scott Huffman, who testified at trial, JPCC officials installed a VRS system as well.

Shelton argues that it was Huffman's request that a VRS system be made accessible to Arce while he was incarcerated that spurred the system's installation.[18] First and foremost, although Huffman may have advocated on Arce's behalf while he was incarcerated at JPCC, there is no evidence that Huffman's request was at all related to Arce's lawsuit or prompted by Arce's counsel. Furthermore, Sheriff Lopinto asserts both that his employees were working with deaf advocates like Huffman well before Arce was a JPCC inmate and that none of the evidence establishes that the VRS system was installed as a result of this lawsuit.[19]

It is unclear from the record what event or combination of events finally prompted the installation of a VRS system at JPCC. It is undisputed, however, that

---

[16] *Id.* at 6; R. Doc. No. 223, at 6–7.
[17] R. Doc. No. 216, at 9.
[18] *Id.*
[19] R. Doc. No. 223, at 6–7; R. Doc. No. 226, at 3.

Huffman had been advocating for the use of such a system since June or July of 2015—before Arce was first incarcerated in December of 2015 and well before this lawsuit was filed in August of 2016.[20] Captain Bryan Bordelon, who was JPCC's assistant deputy administrator when Arce was incarcerated, testified that he was interested in exploring the use of a VRS system because of the information provided to him by Huffman in 2015, but there were bureaucratic and technical hurdles that posed barriers to the system's immediate installation.[21] For example, Bordelon and

---

[20] At trial, Huffman and Shelton's counsel, Andrew Rozynski, engaged in the following exchange:

> **ROZYNSKI:** When was the first time that you had any contact with [JPCC]?
>
> **HUFFMAN:** I would say June or July of 2015.
>
> **ROZYNSKI:** And could you please describe [ ] your initial contact with [JPCC?]
>
> **HUFFMAN:** Sure. At the time I was on what I would call a video phone campaign, an advocacy campaign for deaf and hard of hearing persons. . . . I was reaching out to various different prisons, jails advocating for services for the deaf. So Jefferson Parish is one of the prisons that I did contact . . . .
>
> **ROZYNSKI:** Okay. And do you recall who was the first person that you had contact with at [JPCC] in June or July of 2015? . . .
>
> **HUFFMAN:** Captain Bordelon. . . . I explained to him what video phones were.

R. Doc. No. 213, at 85. Huffman testified that, after he became aware of Arce's incarceration and decided to contact JPCC on Arce's behalf, he sent an e-mail specifically to Captain Bryan Bordelon because he and Huffman had "*already* been in communication." *Id.* at 92.

[21] *See, e.g.*, R. Doc. No. 214, at 142, 145–46, 149, 214.

former Sheriff Normand Newell testified that installation ultimately required approval by the parish.[22]

The evidence clearly establishes that Bordelon and his superiors were working toward acquiring and installing a VRS system before, during, and after Arce's incarceration. Because the VRS system was implemented before this case proceeded to trial in December of 2017, Shelton cannot credibly argue that the jury's verdict was the "primary impetus" behind the system's installation.[23] As to the effect of the overall lawsuit, there is no convincing or direct evidence that it prompted the sheriff's decision to finally install the VRS system at JPCC, and the Court cannot conclude that this litigation changed Sheriff Lopinto's conduct or his office's policies and practices.

However, the State of Louisiana's contention that it did not change its policies as a result of Arce's lawsuit defies the record. This is illustrated by the following colloquy between Shelton's counsel, Brittany Shrader, and Bobby Lee, Jr., the deputy director for the Louisiana Department of Probation and Parole, during his deposition:

> **SHRADER:** In response to your awareness of this lawsuit, do you intend to implement any additional policies?
>
> **LEE:** Yes, ma'am. We're going to go back and relook at all of our policies regarding deaf offenders, and we've already started implementing new policies and new training to assist in doing better communication [sic] with the deaf offenders.[24]

---

[22] *See id.* at 110, 145–46. The VRS system was not installed until after Arce's March 2016 release from JPCC. *Id.* at 173. In fact, according to Bordelon's testimony, the installation did not occur until the fall of 2017—over a year after Arce was released.
[23] *See* R. Doc. No. 216, at 8, 9.
[24] R. Doc. No. 190, at 234.

Although Shelton has yet to point this Court to a particular policy change stemming from this litigation, the State of Louisiana's own representative admitted that Arce's lawsuit prompted a change in its protocols and training. At a minimum, the record reflects that this case "sent a message" to the State of Louisiana that its failure to provide certain deaf and hard-of-hearing individuals with auxiliary aids may constitute discrimination. *See Guerrero v. Torres*, 208 F.3d 1006, 2000 WL 177895, at *2 (5th Cir. 2000) (Table) (holding that attorneys' fees were appropriate because the jury verdict "sent a message to [the defendants] that the unjustified used of force, even when a prisoner is not severely injured, is intolerable in a civilized society"). Therefore, pursuant to Fifth Circuit guidance and considering the facts of this case, Shelton is entitled to an award of attorneys' fees in connection with her counsel's pre-appeal work, to be assessed solely against the State of Louisiana.[25]

---

[25] In its instructions to this Court, the Fifth Circuit focused in part on discrimination cases in which it has affirmed a fee award when the plaintiffs sought monetary relief but obtained only nominal damages. In *Guerrero*, 2000 WL 177895, at *1, the plaintiff-inmate sued several correctional officers for their use of excessive force. Although he achieved only nominal damages, the district court awarded attorneys' fees. *Id.* Affirming the award, the Fifth Circuit relied on the district court's finding that "[the jury's] verdict sent a message to [the defendants]" that unjustified uses of force are "intolerable." *Id.* at *2. Similarly, in *Picou v. City of Jackson*, 91 F. App'x 340 (5th Cir. 2004), the Fifth Circuit affirmed a fee award in a sex-discrimination case because, although the plaintiff achieved only nominal damages, "she established discrimination based on sex, which should serve as a deterrent to [the defendant] in the future." 91 F. App'x at 342.

In both *Guerrero* and *Picou*, the Fifth Circuit held that the district court had not abused its discretion—deferring to the district court's finding that the jury verdict served a deterrent purpose. However, "[e]*very* nominal damages award has as its basis a finding of liability" and, thus, a favorable jury verdict. *Farrar*, 506 U.S. at 118 (O'Connor, J., concurring). *Guerrero* and *Picou* do not preclude the Court from finding—after an evaluation of the case-specific facts and the evidence in the record— that the jury's verdict in this matter had *no* value or deterrent effect. Based on its

## IV.

The Court must now determine what constitutes a reasonable fee award. "[T]he fee applicant bears the burden of establishing entitlement to an award . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court will separately consider Shelton's request for those fees incurred prior to her appeal and her request for fees incurred as a result of and following her appeal.

## ATTORNEYS' FEES FOR WORK COMPLETED
## BEFORE SHELTON'S APPEAL

After a five-day jury trial, Shelton achieved a meager $2 in damages, yet Shelton's attorneys request almost half of a million dollars in fees for efforts undertaken prior to Shelton's appeal. The Court must ensure that an attorneys' fees award assessed against the State of Louisiana is reasonable, as the civil rights litigation fee-shifting provisions were never intended to "produce windfalls to attorneys." *Farrar*, 506 U.S. at 115 (quoting *Riverside v. Rivera*, 477 U.S. 561, 580 (1986)).

Typically, to calculate a reasonable fee, courts in this circuit use the lodestar method. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995). The district court "multipl[ies] the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Then the district court considers whether the lodestar should be adjusted based on the relative weight of the factors set forth in

---

familiarity with the parties and the record, the Court makes precisely that finding with respect to Sheriff Lopinto.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds*, 489 U.S. 87 (1989). *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). The *Johnson* factors are:

(1)   the time and labor required;

(2)   the novelty and difficulty of the issues in the case;

(3)   the skill requisite to perform the legal services properly;

(4)   the preclusion of other employment by the attorney due to acceptance of the case;

(5)   the customary fee charged for those services in the relevant community;

(6)   whether the fee is fixed or contingent;

(7)   time limitations imposed by the client or the circumstances;

(8)   the amount involved and the results obtained;

(9)   the experience, reputation, and ability of the attorneys;

(10)  the undesirability of the case;

(11)  the nature and length of the professional relationship with the client; and

(12)  awards in similar cases.[26]

*Johnson*, 488 F.2d at 717–19. The Supreme Court and the Fifth Circuit have stressed that "the most critical factor" in determining a reasonable fee award is "the degree of success obtained." *Migis*, 135 F.3d at 1047 (quoting *Farrar*, 506 U.S. at 114).

---

[26] "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800.

However, as both this Court and now the Fifth Circuit have noted, "*Farrar* provides the relevant legal framework in this case." *Shelton*, 919 F.3d at 329. "[I]f 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate'"—in other words, the lodestar— "may be an excessive amount." *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436). The Supreme Court counsels that, "[w]here recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Id.* (citation omitted). This comparison "promotes the court's 'central' responsibility 'to make the assessment of what is a reasonable fee under the circumstances of the case.'" *Id.* at 115 (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989)). When *Farrar* governs, as long as the court has "considered the amount and nature of damages awarded, the court may lawfully award low fees . . . without reciting the 12 factors bearing on reasonableness . . . or multiplying 'the number of hours reasonably expended . . . by a reasonable hourly rate.'" *Id.* (citations omitted).[27]

---

[27] *See Gordon v. Trane Co.*, 136 F.3d 1329, 1998 WL 44570, at *1 (5th Cir. 1998) (echoing this approach); *Smith v. Acevedo*, No. 09-620, 2010 WL 11512274, at *1, 2 & n.1 (W.D. Tex. Nov. 22, 2010), *aff'd*, 478 F. App'x 116 (5th Cir. 2012) (awarding only nominal damages and reducing the requested fee award by almost 98% pursuant to *Farrar* without calculating the lodestar); *Velius v. Township of Hamilton*, 466 F. App'x 133, 138 (3d Cir. 2012) ("Whenever the trial court determines that . . . a low fee is proper, *Farrar* eliminates the need to apply multi-factor tests or calculate the lodestar" and "permits a district court to determine the amount of any low fee award it deems is warranted by whatever means it chooses in its broad discretion."); *Mosley v. Town of Pennington Gap*, 995 F.2d 1063, 1993 WL 212484, at *2 (4th Cir. 1993) (Table) ("Where the court finds the plaintiff has failed to prove an essential element of the claim, resulting in nominal damages, it is not necessary for the court to follow the customary procedures in calculating the fee."); *see also No Barriers, Inc. v. Brinker*

Shelton did not request a specific amount of compensatory damages at trial. Her settlement demands are the only indication of the monetary value she assigned to her claims.[28] By Shelton's own account, Arce and his father demanded approximately $2 million from each defendant.[29] After Arce's death, Shelton initially continued to demand $4 million[30] but eventually reduced her demand to $2 million— $1 million per defendant.[31] Although Shelton did not request a specific damages

---

*Chili's Tex., Inc.*, 262 F.3d 496, 501 (5th Cir. 2001) ("[A] court need not explicitly calculate the lodestar to make a reasonable award.").

[28] The Court considers only those negotiations referenced in the parties' briefs and evidenced in the record.

When the Court first considered Shelton's request for attorneys' fees, she argued that the Court should not consider private settlement negotiations in determining her degree of success. R. Doc. No. 184, at 6. The Court rejected Shelton's position. R. Doc. No. 192, at 4 n.19. As the Court noted, Shelton's "position on her settlement demands would leave the Court with no evidence as to the amount of compensatory damages that she sought in this case—and without such evidence, the Court would be hampered in its duty, when calculating a reasonable fee, 'to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought.'" *Id.* (quoting *Migis*, 135 F.3d at 1048).

The Court further explained that, although the Fifth Circuit has yet to address the applicability of Rule 408 of the Federal Rules of Evidence to motions for attorneys' fees, the Third and Ninth Circuits have. *Id.* (citing *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009) and *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011)). The Third Circuit has concluded that "Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case" because "the use of such evidence as bearing on the issue of what relief was sought by a plaintiff does not offend the clear terms" of the rule. *Lohman*, 574 F.3d at 167. The Ninth Circuit has adopted the Third Circuit's reasoning. *Ingram*, 647 F.3d at 927.

[29] *See* R. Doc. No. 184, at 5.

[30] *See* R. Doc. No. 179, at 4; R. Doc. No. 184, at 5; *see also* R. Doc. No. 182-1, at 1 (an e-mail from Shelton's counsel to Sheriff Lopinto's counsel in anticipation of the October 2017 settlement conference in which Shelton's counsel demanded $2 million from each defendant on her behalf).

[31] *See* R. Doc. No. 179-1, at 6.

award at trial, the amount she requested at a settlement conference held only two months before trial reasonably approximates how she valued her case. *See Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009) (noting that evidence of settlement negotiations "can be relevant when comparing what a plaintiff 'requested' to what the plaintiff was ultimately 'awarded'").[32]

Despite Shelton's demand, the jury awarded her, pursuant to the parties' stipulation, what amounted to $1 for each defendant as a result of her failure to prove that the defendants' discrimination caused Arce any injury. In light of Shelton's extremely limited success, the Court concludes that an attorneys' fee award of $495,853.50 would not only be unreasonable but unconscionable. *See Walker v. United States Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) ("[L]imited success requires a downward adjustment."); *Migis*, 135 F.3d at 1048 (reversing the district court's award of attorney's fees because the plaintiff "sought over twenty-six times the damages actually awarded" and, "[r]egardless of the effort and ability of her lawyers, . . . these ratios are simply too large to allow the fee award to stand").

---

[32] When the Fifth Circuit reviewed this Court's denial of attorneys' fees, it "decline[d] to consider the course of settlement negotiations." *Shelton*, 919 F.3d at 329. However, the Fifth Circuit did not conduct a fee calculation analysis. The Fifth Circuit only needed to determine whether *Farrar* governed, which did not require it to quantify the amount of damages Shelton sought. By contrast, this Court has found that attorneys' fees are warranted, and it must determine a reasonable award. To comply with the Supreme Court's guidance—which requires the Court to compare the amount of damages Shelton sought to the amount she was was awarded, *Farrar*, 506 U.S. at 114—the Court *must* look to the parties' settlement negotiations; they provide the only information regarding what Shelton hoped to achieve with respect to her claim for damages at trial.

Being intimately familiar with the facts and history of this case, and having assessed the applicable law, the evidence in the record, and the parties' briefs— including those memoranda submitted before Shelton's appeal—the Court concludes that a fee award of $40,945.02 is reasonable. This amount includes $20,945.02 in requested litigation expenses, to which Shelton is entitled,[33] and $20,000 in additional attorneys' fees. A $40,945.02 award reflects Shelton's limited success at trial while still accounting for her counsel's effort and the effect of the lawsuit on the State of Louisiana, as well as the significance of civil rights litigation.[34]

---

[33] Pursuant to 42 U.S.C. § 12205, prevailing parties are entitled to the reimbursement of "litigation expenses" as part of a reasonable fee award, which includes travel expenses and expert witness fees. *See* R. Doc. No. 192, at 27-28. Shelton has requested $12,357.68 in travel expenses and $8,587.34 in expert witness fees. *See* R. Doc. No. 181, at 1. The Court previously determined that these requests were reasonable and properly documented and that they were necessary to the litigation. R. Doc. No. 192, at 28–29. Consequently, these expenses, which total $20,945.02, are recoverable and reflected in the Court's final award.

[34] As an aside, Shelton's $495,853.50 request does not accurately reflect the lodestar amount. The Court has reviewed the billing records submitted in support of Shelton's motion and finds that there is insufficient evidence of billing judgment. For example, although Shelton contends that her New York attorneys reduced or struck unproductive, excessive, or duplicative time entries, R. Doc. No. 176-1, at 15, there is no record of such edits. "Billing judgment requires documentation of the hours charged *and of the hours written off* as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799 (emphasis added). Additionally, for the reasons explained herein, the Court rejects Shelton's argument that her New York attorneys should be compensated at New York rates.

Out of an abundance of caution, however, the Court notes that, even if the lodestar amount proffered by Shelton's counsel was accurate, the Court would nonetheless award the same fee, $40,945.02, based on the relative weight of the pertinent *Johnson* factors and the Supreme Court's instruction that "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.

## ATTORNEYS' FEES FOR WORK COMPLETED
## IN CONNECTION WITH AND FOLLOWING SHELTON'S APPEAL

Shelton also moves the Court to award her $138,435.75 for work performed in furtherance of her appeal on the limited issue of attorneys' fees.[35] With respect to this request, the Court will use the lodestar method to determine a reasonable award.[36] "As noted, the first step . . . is an evaluation of the number of hours reasonably expended." *Kellstrom*, 50 F.3d at 324. "The party seeking attorneys' fees must present adequately documented time records to the court." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Additionally, the fee applicant "[has] the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

As an initial matter, the Court issued its original order denying Shelton's motion for attorneys' fees on March 1, 2018.[37] Shelton's post-appeal brief includes documentation of her counsel's billing before that date.[38] Compensation for those entries, which are dated beginning on January 8, 2018, are reflected in this Court's initial and aforementioned award, as they are entries associated with time Shelton's counsel spent on this case before her appeal. Accordingly, the Court has reduced the

---

[35] *See* R. Doc. No. 215-1, at 15.

[36] Although neither defendant disputes Shelton's entitlement to appeal-related fees, the Court notes that such fees are recoverable because Shelton prevailed on appeal. *See Bode v. United States*, 919 F.2d 1044, 1052 (5th Cir. 1990); *cf. Watkins v. Roadway Express Inc.*, 45 F. App'x 325, 2002 WL 1899581, at *1 (5th Cir. 2002) (citing *Norris v. Hartman Specialty Stores, Inc.*, 913 F.3d 253, 257 (5th Cir. 1990)). Shelton was successful in obtaining a remand with vacatur on the issue of attorneys' fees. Although, as discussed herein, Shelton was not meritorious on every issue, she is nonetheless a prevailing party.

[37] R. Doc. No. 192.

[38] R. Doc. No. 215-1, at 1–2.

total hours in Shelton's post-appeal brief, 361.69 hours,[39] by the number of hours for work performed before March 1, 2018, which results in a total of 343.69 hours related to her appeal.

Typically, "[b]illing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799; *cf. Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990), *vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off."); *Leroy v. City of Houston*, 831 F.2d 576, 585 n.15 (5th Cir. 1987) ("Despite making repeated findings that the attorneys exercised billing judgment in this case, the billing records are completely devoid of any hours written off."). Shelton asserts that she reduced her fees by writing off "billing that was excessive or purely administrative or not necessary for the appeal."[40] However, she has not provided any further information, and the invoice submitted in support of her request, which includes itemized billing entries, does not include those entries that were reduced or stricken.

In addition to the fact that Shelton has not provided evidence of billing judgment, the purportedly edited entries suggest a lack of such judgment. To illustrate, it appears that one attorney occasionally (but not always) reduced the hours she spent traveling, whereas there is no such evidence for the other attorneys.[41]

---

[39] *Id.* at 14.

[40] R. Doc. No. 216, at 13.

[41] *Compare*, *e.g.*, R. Doc. No. 215-1, at 11 (billing for the three and a half hours Jennifer Karnes spent reviewing briefs on a flight despite her total travel time of six

Concerningly, Karnes's entry for traveling to New Orleans is double billed.[42] "The proper remedy for omitting evidence of billing judgment is a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.*; *see also Dardar v. T&C Marine, L.L.C.*, No. 16-13797, 2018 WL 3950396, at *8 (E.D. La. May 3, 2018) (Wilkinson, M.J.) (cataloging cases). Therefore, the Court will reduce the lodestar appropriately.[43]

The Court next determines the appropriate rates for each individual who worked on the matter. Shelton requests hourly rates for each of her attorneys and the paralegals as follows:[44]

| Attorney/staff member | Hourly rate |
|---|---|
| Andrew Rozynski | $500 |
| Jennifer Karnes | $450 |
| Juyoun Han | $350 |
| Paralegals | $150 |

hours), *with* R. Doc. No. R. Doc. No. 215-1, at 11 (billing for all seven hours Juyoun Han spent on "[t]ravel to New Orleans for oral argument").

[42] *See* 215-1, at 11 (two entries billing for Karnes's trip to New Orleans on March 10, 2019—one for two and a half hours and one for three and a half hours).

[43] *See infra* p. 25.

[44] As an aside, and although this Court declines to award Shelton's counsel New York rates, "[s]atisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits." *Cameron v. Greater New Orleans Fed. Credit Union*, No. 16-8514, 2017 WL 1426970, at *2 (E.D. La. Apr. 21, 2017) (Roby, M.J.) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Shelton has not provided the Court with any information regarding what Karnes or Han have been awarded in other lawsuits. With respect to Rozynski, his declaration includes references to one prior case and one prior arbitration award—and Rozynski was awarded less than his requested rate in both instances. *See* R. Doc. No. 215, at 3.

As a general rule, "'reasonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community,'" *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), not "the rates that 'lions at the bar may command,'" *Hopwood III*, 236 F.3d at 281 (quoting *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990)). The relevant community is "the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998), *abrogated on other grounds*, 532 U.S. 598 (2001)). Only "where . . . abundant and uncontradicted evidence prove[s] the necessity of . . . out-of-district counsel" should such counsel's "home" rates be considered for the purposes of calculating the lodestar. *McClain*, 649 F.3d at 382.

Shelton argues that her New York-based attorneys should be compensated at New York rates because of their special expertise in discrimination cases involving deaf individuals and the necessity of their representation in this matter. In support of this contention, Shelton submitted a declaration from John Veazey, who practices disability civil rights law in Louisiana.[45] According to Veazey, "very few attorneys in Louisiana handle" disability civil rights cases.[46] To the best of his knowledge, he and only two other Louisiana attorneys "hold themselves out to accept and handle [these] types of case[s]."[47] Veazey asserts that, "given the volume of work and money spent in successfully prosecuting the case at bar, . . . it would have been extremely difficult,

---

[45] R. Doc. No. 216-2, at 1.
[46] *Id.* at 2.
[47] *Id.*

if not impossible, for in-state counsel to have had the resources to litigate this matter and obtain the successful result that [Shelton's counsel] did."[48]

Veazey references the "[i]mportant and extremely convoluted points of law" that had to be litigated before trial, but none of the issues raised and briefed in pretrial motions were specific to deaf or hard-of-hearing individuals. This Court has presided over a number of cases in which Louisiana attorneys prosecuted cases under Title II of the ADA and/or the Rehabilitation Act, and many, if not all, are equipped to analyze and argue the pretrial legal issues raised in this case. As the State of Louisiana notes, the majority of the issues litigated—not only before but also during trial—involved the same law and required the same analysis as any Title II case. Second, and more importantly, none of the issues litigated before and during trial were relitigated on appeal.[49] Shelton's appeal pertained exclusively to the issue of her entitlement to attorneys' fees, an issue non-unique to discrimination cases and deaf plaintiffs.

"Contrary to [Shelton's] counsel's appreciation of this case, [the Court] do[es] not perceive it to have been extraordinarily difficult." *Hopwood III*, 236 F.3d at 281. In an affidavit submitted by one of Shelton's local attorneys, Andrew Bizer, Bizer cited the "difficult issues" involved in this case, his firm's lack of experience with deaf individuals, and "added costs of the litigation" to support the Court's use of New York

---

[48] *Id.* at 3–4.
[49] Brief for the Appellant at 2, *Shelton v. Louisiana*, 919 F.3d 325 (5th Cir. 2019) (No. 18-30349) ("[T]he issues that give rise to the instant appeal is [sic] limited to the District Court's denial of Arce-Shelton's attorney's fees, *not* the judgment regarding Arce-Shelton's discrimination claims.").

rates to compensate Shelton's New York attorneys. But Bizer has yet to specify the difficult issues or additional costs.

The Court has borne witness to the skill, expertise, and motion practice required throughout the life of this matter, and it cannot justify permitting Shelton's New York counsel to be compensated at New York rates—especially in connection with her appeal of the Court's denial of attorneys' fees. It is clear to the Court that Shelton's local counsel were fully capable of understanding how the relevant law applied to the facts of this case. Furthermore, although Bizer attested that this case was "especially problematic" because Arce was bipolar and because Arce passed away during the pendency of this action, there is no indication that Shelton's New York counsel were more equipped to handle those particular issues or that those issues required any specialized New York expertise. Finally, Shelton has not provided the Court with any information specific to the issues litigated on appeal or any explanation as to why the Court should award her appellate counsel, in particular, New York rates.

There is simply no "abundant and uncontradicted" evidence sufficient to overcome the general rule providing that local community rates govern. *McClain*, 649 F.3d at 382. Considering the affidavits filed alongside the parties' initial briefing, the declaration and documentation submitted by Shelton in April of 2019 following remand, recent and comparable case law outlining the reasonable fees set by courts in this district, and the Court's knowledge of billing rates among Eastern District of Louisiana lawyers, the Court concludes that Shelton's New York counsel and their support staff should be compensated at the following rates:

| Attorney | Hourly rate |
|---|---|
| Andrew Rozysnki | $275[50] |
| Jennifer Karnes | $175[51] |
| Juyoun Han | $125[52] |

[50] According to his declaration, Rozynski has been a partner since 2013. R. Doc. No. 215, at 2. He was admitted to practice law in 2012—meaning he has, at most, seven years of experience as a practicing attorney. *See id.* at 3. He has litigated over 300 cases representing deaf individuals. *Id.* at 2. The Court concludes that Rozynski should be compensated at a rate comparable to Shelton's most experienced local counsel, Andrew Bizer.

Bizer graduated from law school in 2003, and he has over fifteen years of experience. R. Doc. No. 176-7, at 1–2. He specializes in disability discrimination cases, founded his own law firm in 2008, and has been involved in over 300 ADA cases. *Id.* at 1–2. According to Bizer, he is most frequently compensated at an hourly rate of $275. *See id.* at 3. This comports with the compensation of other attorneys with comparable skill and experience. *See Gilmore v. Audubon Nature Inst., Inc.,* 353 F. Supp. 3d 499, 508–09 (E.D. La. 2018) (Wilkinson, M.J.) (cataloging ADA cases in which attorneys with thirteen to fifteen years of experience were awarded hourly rates of $275).

[51] Like Rozynski, Karnes has been admitted to practice law in New York since 2012; thus, she also has approximately seven years of experience. R. Doc. No. 215, at 3. She focuses primarily on representing deaf individuals in discrimination cases. *Id.* Shelton's requested rate for Karnes is lower than her requested rate for Rozynski. For a senior associate with Karnes's experience in her specialty area, the Court finds $175 to be an appropriate hourly rate in this community. *See* R. Doc. No. 176-7, at 69 (declaration of Shelton's local counsel Garret DeReus, a junior partner who graduated from law school in 2013 and has been involved in over 200 ADA cases, attesting that his hourly rate is $175); *see also Mark v. New Orleans City,* No. 15-7103, 2017 WL 23764392, at *3 (E.D. La. May 4, 2017) (Knowles, M.J.) (awarding DeReus $175 per hour when he had four years of experience); *Gilmore,* 353 F. Supp. 3d at 509 (awarding an hourly rate of $275 to attorneys who specialized in ADA cases and had sixteen years of experience).

[52] Han has been admitted to practice law in New York since 2016. *Id.* at 4. For a junior associate with her experience in her specialty area, the Court finds that $125 is an appropriate hourly rate in this community. *Mark v. Sunshine Plaza,* No. 16-455, 2018 WL 1282414, at *4 (E.D. La. Mar. 12) (Wilkinson, M.J.), *approved and adopted,* 2018 WL 1960022 (E.D. La. Apr. 26, 2018) (Morgan, J.) (awarding $125 per hour for associates with five years of experience in an ADA case); *Mark v. Covington City,* No. 15-5977, R. Doc. No. 30, at 4 (E.D. La. July 8, 2016) (Zainey, J.) (awarding two associates with three years of experience an hourly rate of $125 in an ADA case); *See*

| Paralegals | $85[53] |
|---|---|

Based on the Court's determination of the hours expended by each attorney and each attorney's corresponding hourly rate, the lodestar is calculated as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| Andrew Rozynski: | $275 | x | 55.80 hours | = | $15,345.00 |
| Jennifer Karnes: | $175 | x | 84.94 hours | = | $14,864.50 |
| Juyoun Han: | $125 | x | 188.85 hours | = | $23,606.25 |
| Paralegals: | $85 | x | 14.10 hours | = | $1,198.50 |

$55,014.25 total

To reflect the lack of evidence related to billing judgment, the Court reduces that amount by 15%, and it calculates the final lodestar amount to be $46,762.11.[54]

Having calculated the lodestar, the Court must now determine whether it should be adjusted. The most important factor for the Court to consider is the "degree of success obtained." *Hensley*, 461 U.S. at 436. Broadly, Shelton is a prevailing party because the Fifth Circuit reversed this Court's order denying her attorneys' fees and

---

*Herbert v. Audubon Comm'n*, No. 15-5425, 2017 WL 5900978, at *2 (E.D. La. Nov. 30, 2017) (Lemelle, J.) (awarding $125 per hour for a third-year associate in an ADA case).

[53] *See Miraglia v. Bd. of Supervisors of La. State Museum*, No. 15-4947, 2017 WL 5177936, at *1 (E.D. La. Nov. 7, 2017) (Zainey, J.), *aff'd*, 901 F.3d 565 (5th Cir. 2018) (awarding $75 per hour for a paralegal); *Falls v. Bd. of Comm'rs of New Orleans Reg'l Transit Auth.*, No. 16-2499, 2017 WL 2730781, at *10 (E.D. La. June 26, 2017) (Roby, M.J.) (awarding $100 per hour for a paralegal); *Norris v. Causey*, No. 14-1598, 2016 WL 1046101, at *3 (E.D. La. Mar. 16, 2016) (Barbier, J.) (awarding $80 per hour for a paralegal); *Mark*, 2017 WL 2374392, at *3 (awarding $90 per hour for a paralegal).

[54] *See Hopwood III*, 236 F.3d at 279, 281 (affirming the district court's fee award, which included a 25% reduction for inadequate billing records and judgment); *Saizan*, 448 F.3d at 800 (affirming a 10% reduction of the lodestar because the plaintiff failed to provide evidence of billing judgment); *Dardar*, 2018 WL 3950396, at *9 (reducing the total by 15% to account for billing deficiencies).

ordered the Court to reconsider its decision. However, on remand, Shelton has been unable to demonstrate that she achieved a compensable goal with respect to one of the two defendants.

Furthermore, a closer look reveals that Shelton's success on appeal was limited: the Fifth Circuit rejected several of her arguments, as well as her proposed remedy, and it disagreed with her on several foundational issues. First, Shelton initially moved the Fifth Circuit to grant her attorneys' fees.[55] Specifically, Shelton requested that the Fifth Circuit "issue an order granting [her] motion for attorneys fees . . . *without remand*."[56] The Fifth Circuit declined. To the contrary, it "express[ed] no opinion as to the propriety of awarding fees in this case." *Shelton*, 919 F.3d at 331.

---

[55] Brief for the Appellant, *supra* note 49, at 10 ("This Court should find that the District Court abused its discretion, reverse the District Court's ruling and grant attorney's fees to Appellant . . . .").

[56] Brief for the Appellant, *supra* note 49, at 48 (emphasis added). In the alternative, Shelton requested that the Fifth Circuit "reserve [sic] the District Court's ruling and remand . . . for further calculation of costs and fees." *Id.* Shelton points out that, at oral argument, Judge Higginson asked her counsel, "You're asking us to vacate [and] remand so that the district judge applies the right law in terms of deciding whether, under *Farrar*, despite the fact that you only got a dollar, there still is a significant public victory?" He responded, "Absolutely, Your Honor, that's correct of [sic] what we're seeking." Oral Argument at 00:33, *Shelton v. Louisiana*, 919 F.3d 325 (5th Cir. 2019) (No. 18-30349), http://www.ca5.uscourts.gov/OralArgRecordings/18/18-30349_3-11-2019.mp3.

However, there is no indication that Shelton formally abandoned her original position that, instead of remanding the case, the Fifth Circuit should have simply awarded her attorneys' fees. Indeed, right up until oral argument, Shelton urged the Fifth Circuit to enter an order granting her motion for attorneys' fees. *See* Reply Brief for the Appellant, at 14, *Shelton v. Louisiana*, 919 F.3d 325 (5th Cir. 2019) (No. 18-30349) ("Arce-Shelton respectfully requests that this Court reverse the District Court's decision and issue an order granting Appellant's motion for attorney's fees and costs as requested. Alternatively, Appellant requests that this Court remand to the District Court for further calculation of an appropriate attorney's fee award.").

Second, Shelton argued that this case was not governed by the Supreme Court's decision in *Farrar*.[57] Shelton argued that this case was more like *Sanchez v. City of Austin*, 774 F.3d 873 (5th Cir. 2014), and *Riley v. City of Jackson*, 99 F.3d 757 (5th Cir. 1996), cases in which the Fifth Circuit held that *Farrar* did not apply because, in addition to nominal damages, the plaintiffs sought and obtained injunctive relief.[58] The Fifth Circuit rejected Shelton's argument, agreeing with this Court "that *Farrar* provides the relevant framework" and expressly distinguishing *Sanchez* and *Riley*. *Shelton*, 919 F.3d at 328–29.

Third, Shelton argued that this Court erred when it concluded that Shelton's primary objective in this lawsuit was the pursuit of monetary relief.[59] The Fifth Circuit disagreed:

> We do not question the sincerity of Shelton's desire to vindicate the rights of Arce and other deaf individuals through this lawsuit. But a plaintiff's *subjective* motivation in pursuing civil rights litigation is not the relevant consideration. As the Supreme Court has explained, "focusing on the subjective importance of an issue to the litigants" raises "a question which is almost impossible to answer" and "is wholly irrelevant to the purposes behind the fee shifting provisions." . . . We agree with the Fourth Circuit that "*Farrar* simply requires courts to consider the relief that was sought by the plaintiff, not the relief that was most important to the plaintiff."

*Id.* at 329 (citations omitted). Consistent with this Court's opinion, the Fifth Circuit concluded that "Shelton sought compensatory damages," received only nominal

---

[57] Brief for the Appellant, *supra* note 49, at 16.

[58] *Id.* at 15–16; Reply Brief for the Appellant, *supra* note 56, at 6–7.

[59] Brief for the Appellant, *supra* note 49, at 21–22 (arguing that Arce and Shelton pursued equitable remedies throughout the litigation and that "Arce-Shelton's remedies sought *at trial* does [sic] not represent the damages she sought throughout the entirety of the lawsuit").

damages, and "obtained no other judicial relief" and that, as a result, a denial of fees may be appropriate. *Id.*

The Court finds that almost all of the *Johnson* factors are subsumed within the Court's calculation of the lodestar and the Court's consideration of the "degree-of-success" factor. *See, e.g., Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (noting that Supreme Court precedent suggests that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee" (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986))). Thus, based on an extensive review of the parties' briefs, the underlying facts of the case, and Shelton's limited success with respect to the issues she raised on appeal as well as her arguments before this Court on remand, the Court finds that an adjusted fee award of $36,762.11 is appropriate.[60] Adding to that the amount Shelton's counsel spent on travel expenses, which totals $2,092.80, the award for appeal-related fees amounts to $38,854.91.[61]

---

[60] For clarity purposes, this figure stems from the following calculation: first, the Court calculated the lodestar to be $55,014.25. To reflect a lack of billing judgment, the Court reduced that figure by 15% to $46,762.11. Finally, to account for Shelton's lack of success, the Court further reduced the amount by $10,000 to $36,762.11. That total, plus $2,092.80 in appeal-related costs, produces a sum of $38,854.91.

[61] Travel expenses are recoverable as part of an attorneys' fee award. *See supra* note 33. Shelton's appellate counsel spent $1,489.80 on roundtrip airfare traveling from New York to New Orleans for oral argument before the Fifth Circuit, R. Doc. No. 215-3, at 12, 18, and they spent $603 on lodging while in New Orleans. (Shelton's counsel indicated that their lodging cost them $633—$211 per room for three rooms, one for each attorney. R. Doc. No. 215-1, at 14. However, the receipts show that her counsel were only charged $603 as a result of a $30 credit, which Shelton has not explained. *See* R. Doc. No. 215-3, at 9.) Accordingly, in addition to the reduced lodestar amount, Shelton is entitled to recover $2,092.80 in travel expenses, which are reflected in the final amount calculated by the Court.

## V.

Finally, the Court turns to Shelton's final request for appeal-related costs. On April 9, 2019, Shelton submitted a bill of costs to the Fifth Circuit in the requested amount of $5,234.95. The Fifth Circuit's Clerk of Court approved costs in the amount of $753.46.[62] Shelton requests additional costs from this Court.[63]

"[A] district court may not award costs unless it first determines 'that the expenses are allowable cost items and that the costs are reasonable, both in amount and in necessity to the litigation.'" *Katz v. State Farm Fire & Cas. Co.*, No. 06-4155, 2009 WL 3712588, at *1 (E.D. La. Nov. 4, 2009) (Vance, J.) (citation omitted). Federal Rule of Civil Procedure 54(d)(1) provides that a "prevailing party" in federal court "should be allowed" to recover their non-attorneys'-fee "costs."

Title 28, United States Code, § 1920 "enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). These expenses are:

    (1)    Fees of the clerk and marshal;

---

[62] R. Doc. No. 227-2, at 1.

[63] *See* R. Doc. No. 215-1, at 14–15. Although it appears that the Court has the authority to reduce requested costs and expenses based on a party's limited success, *see Cashman Equip. Corp. v. Rozel Operating Co.*, 569 F. App'x 283, 288–89 (5th Cir. 2014), neither defendant has objected to Shelton's request for costs or moved the Court to reduce the requested amount, and the Court declines to do so on its own initiative.

Shelton requests reimbursement for expenses related to travel and acquiring transcripts. As the Court has previously explained, however, travel expenses are not recoverable under § 1920. R. Doc. No. 192, at 27 n.61 & 29 n.65; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 892 (5th Cir. 1993). The Court has considered, and awarded, Shelton's request for travel expenses as part of her request for attorneys' fees. *See supra* note 61. Thus, the award of costs discussed in this Part V includes only the transcript costs.

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title; and

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

§ 1920; *see also Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001). Because costs associated with obtaining trial transcripts are recoverable under § 1920(2), and because the record reflects that Shelton relied on the transcripts, the Court will award Shelton her related costs in the amount of $2,541.40.[64]

## VI.

To conclude, the Court reiterates the basic facts underlying Shelton's request: she sought as much as $4 million in compensatory damages for the discrimination she alleged against the State of Louisiana and Sheriff Lopinto, but she achieved only nominal damages and obtained no other judicially sanctioned relief.[65] Although the Court has concluded that attorneys' fees are warranted, such fees must be reasonable—particularly in light of Shelton's extremely limited success.

The Court therefore awards Shelton $40,945.02 in attorneys' fees and expenses for the work her counsel performed prior to her appeal. Because she has failed to

---

[64] R. Doc. No. 215-3, at 1.
[65] R. Doc. No. 192, at 32.

establish that she achieved a compensable public goal that has any connection to Sheriff Lopinto, the State of Louisiana shall bear the full cost.

The Court also awards Shelton $38,854.91 for attorneys' fees related to her appeal, as well as $2,541.40 in appeal-related costs. Before the Fifth Circuit, both the State of Louisiana and Sheriff Lopinto argued that Shelton was not entitled to *any* award pursuant to *Farrar*. Although the Fifth Circuit declined to comment on the appropriateness of a fee award, it nonetheless remanded the case for reconsideration, rejecting the defendants' argument that this Court's judgment should be affirmed. In other words, the State of Louisiana and Sheriff Lopinto lost on appeal, and they shall each pay half of the total appeal-related award.

Accordingly,

**IT IS ORDERED** that Shelton's motion for attorneys' fees and costs is **GRANTED IN PART** and **DENIED IN PART**, in accordance with this order.

**IT IS FURTHER ORDERED** that, for the work performed by Shelton's counsel prior to her appeal, she shall be awarded attorneys' fees in the amount of $40,945.02, assessed solely against the State of Louisiana, as well as post-judgment interest at the federal statutory rate pursuant to 28 U.S.C. § 1961, beginning on the date of this Court's judgment on the merits, December 18, 2017, until judgment is paid.[66]

---

[66] All of the parties agree that the accrual of post-judgment interest is governed by *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir. 1983) (en banc), *overruled in part on other grounds*, 790 F.2d 1193 (5th Cir. 1986). In *Copper Liquor*, the Fifth Circuit held that an attorneys' fee award "bear[s] interest from the date a judgment is rendered making the award." *Id.* at 543. "If a judgment is rendered that does not mention the right to attorneys' fees, and the prevailing party is unconditionally entitled to such fees by statutory right, interest will accrue from the

**IT IS FURTHER ORDERED** that, for the work performed by Shelton's counsel in connection with her appeal, she shall be awarded attorneys' fees in the amount of $38,854.91 and costs in the amount of $2,541.40, as well as post-judgment interest at the federal statutory rate pursuant to 28 U.S.C. § 1961, beginning on the date of the Fifth Circuit's judgment, March 26, 2019, until judgment is paid.

Of the appeal-related award, Sheriff Lopinto shall pay $20,698.15—one-half of the amount of fees and costs awarded in connection with Shelton's appeal. The State of Louisiana shall pay the remaining $20,698.16.

New Orleans, Louisiana, June 4, 2019.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

date of judgment." *Id.* at 544; *see also Kellstrom*, 50 F.3d at 331–32. Accordingly, the Court will award Shelton interest on the pre-appeal award beginning from the date of this Court's judgment on the merits, December 18, 2017. The Court will award interest on the award related to her appeal beginning from the date of the Fifth Circuit's judgment, March 26, 2019.